ROBERT A. McGILLIS and JESSIE McGILLIS, Respondents, *v.* EWEN McGILLIS et al., Respondents; MORRISON M. E. JARVIS and HENRY W. HAYDEN, Impleaded, Appellants.

1. WILL — CONTINGENT REMAINDER. The will of a testator who died in 1848 devised certain lands in this state to a married daughter for life, and in case her husband survived her, to him for life, and then provided that "from and after the decease of both my said daughter and her said husband, I give, devise and bequeath the remainder or fee simple in said property to the lawful issue of my said daughter then living, in such relative proportions (if such issue consist of more than one person) as they would by the laws of the state of New York have then inherited, or taken the same from her, in case she and they were then native-born citizens of said state and she had then died intestate, lawfully seized of said property in fee simple." The daughter and her husband survived the testator, and the daughter, with children, survived her husband. *Held,* in an action of partition subsequent to the daughter's death, that the remainder was contingent, and not vested, until the death of the daughter.

2. DEVISE OF REMAINDER TO ALIENS. The testator was a citizen of the United States; the daughter was born in the United States, but her husband was an alien, and after her marriage she resided in a foreign country, where her children were born. The daughter, having survived her husband, died in 1893, leaving as her surviving issue six children, three born before the death of the testator and three after, and one infant grandchild, the son of a deceased child born after the death of the testator. At the time of the death of the testator's daughter, the provisions of the Revised Statutes (2 R. S. 57, § 4) making void a devise to a person who, at the time of the death of the testator, is an alien, had been changed by chapter 42 of Laws of 1889, so that such provisions no longer applied to the foreign-born children of a married woman born in this country. *Held,* that as there was no outstanding vested remainder in the way of the operation of the act of 1889, it applied to the devise in question; that, under that statute, existing at the time of the death of the daughter, the devised estate, if it had been hers and she had died intestate, would have descended to her children, the infant grandchild taking his parent's portion, which would have been one-seventh of the estate; and, hence, that the infant was seized of an undivided one-seventh interest in the devised premises.

3. NO ESCHEAT WHILE REMAINDER CONTINGENT — NO VESTING BY RELEASE FROM STATE. In an action brought in 1850 for a construction of the will, it was adjudged that the devise to the testator's daughter for life was valid, she not being an alien, but that the devise to her husband and to her children, who were aliens at the time of the death of the testator, was void and that they had no interest in the estate. In a subsequent action of partition, a judgment was rendered directing that the

land devised to the testator's daughter be set off to her for life, with the
fee therein to the heirs at law of the testator. In 1887 the Legislature
passed a special act (Ch. 310), by which the People released to all the chil-
dren of the testator's daughter surviving at the time of her death, all the
interest of the state in the property, and granted to them all the title
which, by escheat, was vested in the People. The children of the testa-
tor's daughter who were born before the testator's death then conveyed to
her after-born children all their interest in the property, the after-born
children agreeing to share equally with them should they succeed in
establishing title. Thereupon, the after-born children, as plaintiffs in a
cross action against the testator's heirs at law, obtained an adjudication
declaring that the remainder was, by force of the act of 1887, vested in the
four after-born children, and barring the testator's heirs at law from all
title thereto. *Held*, that these adjudications did not affect the above con-
struction of the will, since, in so far as they adjudged the remainder to
belong to the heirs at law, the court exceeded its power, and, as the
remainder was contingent, nothing could escheat or vest in the state until
the life estate terminated, and as, upon the happening of that event gen-
eral laws intervened, under which the children of the testator's daughter
were permitted to take the estate, the state had, in 1887, no estate which
it could convey.

4. EFFECT OF FORMER ADJUDICATION. The infant grandchild, the son
of a deceased daughter of the testator's daughter born after the testator's
death, claimed in the present action that, as his mother was one of the
four after-born children, he was entitled to one-fourth of the devised estate,
instead of one-seventh, and that he was not bound by her agreement to
share equally with the first-born children. *Held*, that this claim was not
helped by the judgment in the cross-action, since, although it decided that
the share of the grandchild's mother was one-fourth, this share was, under
that judgment, subject to her contract, making her resulting share one-
seventh.

5. ATTORNEY — EQUITABLE LIEN FOR SERVICES. Prior to the death of
the testator's daughter (the life tenant), her children (the remaindermen),
including the mother of the infant grandchild, being aliens, contracted
with an attorney at law fo convey to him a parcel of the devised land, in
consideration of his obtaining necessary legislation and conducting litiga-
tion to establish their rights as against the testator's heirs at law. The
attorney succeeded in his undertaking, and the children thereupon deeded
to him the stipulated parcel of land. The infant grandchild was born
thereafter. The contract was found to be fair and reasonable. *Held*, that
the after-born grandchild was bound by the contract and conveyance to
the attorney, on the ground that the attorney had an equitable lien for the
services rendered by him for the estate, of which the grandchild had
received the benefit, and that the grandchild's interest in the property was
subject to such lien.

*McGillis* v. *McGillis*, 11 App. Div. 359, modified.

(Argued November 22, 1897; decided January 11, 1898.)

Appeal, by certification, from an order of the Appellate Division of the Supreme Court in the third judicial department, entered March 11, 1897, reversing in part and affirming in part an interlocutory judgment in partition, entered upon the report of a referee.

The facts, so far as material, and the questions certified are stated in the opinion.

*Henry W. Hayden* for plaintiffs and in his own behalf. The question as to what shares Mrs. McGillis' lawful issue would take, upon the termination of her life estate, could not be determined until her death on December 8, 1893, nor could such remainder take effect until her death. (1 R. S. 725, § 29.) The infant Jarvis has no interest in the premises conveyed to Mr. Hayden for his fees and disbursements in the litigations conducted by him. (*Fowler* v. *Callan*, 102 N. Y. 395.) Assuming for the purposes of this argument that the infant Jarvis owns an undivided interest in said premises conveyed to Mr. Hayden, there is no question but that Mr. Hayden can recover from these surviving covenanting grantors, namely, Mrs. McGillis' six children, under said covenants, whatever it costs him to perfect his title as against said infant Jarvis, that is, to purchase his share therein. (1 Story's Eq. Juris. [11th ed.] § 505; *Low* v. *Vrooman*, 15 Johns. 238; *Aspinwall* v. *Sacchi*, 57 N. Y. 335; *Lawrence* v. *Fox*, 20 N. Y. 268; *In re Hynes*, 105 N. Y. 560.) The appellant, Mr. Hayden, has an attorney's lien under section 66 of the Code of Civil Procedure, upon the share of the estate which he recovered for Mrs. Jarvis, and which has now come into the hands of her son, the infant defendant, Morrison M. E. Jarvis. (*Peri* v. *N. Y. C. & H. R. R. R. Co.*, 152 N. Y. 521.) An attorney, conducting his case under an agreement to receive his compensation out of the proceeds, has an equitable lien on, or ownership, as equitable assignee in, the proceeds of the action. (*Harwood* v. *LaGrange*, 137 N. Y. 538; *Boyle* v. *Boyle*, 106 N. Y. 654; *Chester* v. *Jumel*, 125 N. Y. 237.)

*Henry T. Kellogg*, guardian ad litem, for infant Morrison M. E. Jarvis, appellant. The defendant Jarvis is an owner of a one-fourth of the property to be partitioned. (2 R. S. 57, § 4; *Mick* v. *Mick*, 10 Wend. 379; *Hall* v. *Hall*, 81 N. Y. 133; *Marx* v. *McGlynn*, 88 N. Y. 376; *Wadsworth* v. *Wadsworth*, 12 N. Y. 376; *Beck* v. *McGillis*, 9 Barb. 45; *Van Nostrand* v. *Marvin*, 16 App. Div. 28; *White* v. *Howard*, 46 N. Y. 144; *Brevoort* v. *Grace*, 53 N. Y. 245; 1 R. S. 722, § 13; *Moore* v. *Littel*, 41 N. Y. 66; *Nodine* v. *Greenfield*, 7 Paige, 544.) The Escheat Act of 1887 did not validate the devise to the first three, or give them any rights in this property. ( *Van Cortlandt* v. *Laidley*, 59 Hun, 161; 2 Kent's Com. 61, 541, 555; *Jackson* v. *Adams*, 7 Wend. 367; *Wilbur* v. *Toby*, 16 Pick. 177; *Mooers* v. *White*, 6 Johns. Ch. 365; *Wright* v. *Saddler*, 20 N. Y. 324; *People* v. *Conklin*, 2 Hill, 67; *Wadsworth* v. *Wadsworth*, 12 N. Y. 376; *Hall* v. *Hall*, 81 N. Y. 134; 2 R. S. ch. 1, tit. 2, § 13; *Moore* v. *Littel*, 41 N. Y. 80; *Lawrence* v. *Bayard*, 7 Paige, 70; *Campbell* v. *Stokes*, 142 N. Y. 23; *In re Seaman*, 147 N. Y. 69.) The general act of 1889, in relation to aliens, did not validate that devise or give any interest to the first three. ( *Brevoort* v. *Grace*, 53 N. Y. 245; *White* v. *Howard*, 46 N. Y. 144; *Baptist Association* v. *Harts*, 4 Wheat. 1; *Owens* v. *Missionary Society*, 14 N. Y. 384; *In re McGraw*, 111 N. Y. 112; *Luhrs* v. *Eimer*, 80 N. Y. 171; *N. Y. & O. M. R. R. Co.* v. *Van Horn*, 57 N. Y. 473; *Jackson* v. *Van Zandt*, 12 Johns. 168; *Sayre* v. *Wisner*, 8 Wend. 662.) It is *res adjudicata* that the first three took no interest under Caldwell's will and the acts of 1887 and 1889. (*Mead* v. *Mitchell*, 17 N. Y. 210; *Cheeseman* v. *Thorn*, 1 Edw. Ch. 629; *Clemens* v. *Clemens*, 37 N. Y. 59; *Breevoort* v. *Grace*, 53 N. Y. 245; *Brevoort* v. *Brevoort*, 70 N. Y. 136; *Sheridan* v. *House*, 4 Keyes, 569; *In re Ryder*, 11 Paige, 185; *Harris* v. *Strodl*, 132 N. Y. 392.) Morrison Jarvis is the owner of a one-fourth interest in the mansion house property, and is not bound to convey the same to Henry W. Hayden by virtue of his mother's deed to him, or on account of any equitable lien

claimed by him thereupon for attorney's services. (*Harris* v. *Strodl*, 132 N. Y. 392 ; *Bartholmew* v. *Jackson*, 20 Johns. 28 ; *Cambreleng* v. *Graham*, 84 Hun, 550 ; 1 R. S. 718, § 5 ; *Sherman* v. *Wright*, 49 N. Y. 230.)

*Marcus T. Hun* for Ewen McGillis et al., respondents. The title in remainder did not finally vest under the will of William Caldwell until the death of Eliza McGillis. (*In re Baer*, 147 N. Y. 348 ; 1 R. S. 723, § 13 ; *Beck* v. *McGillis*, 9 Barb. 35 ; *Van Cortlandt* v. *Laidley*, 59 Hun, 161.) The adjudications which have heretofore taken place do not estop the children of Eliza McGillis from claiming that the title finally vested on the death of Eliza McGillis. (*Van Cortlandt* v. *Laidley*, 59 Hun, 161 ; *Shipman* v. *Rollins*, 98 N. Y. 311 ; *Masten* v. *Olcott*, 101 N. Y. 152.) As the " first four " born children were competent to take, at the date of Eliza McGillis' death, the title passed to them at her death. (*Haynes* v. *Sherman*, 117 N. Y. 433 ; *In re Baer*, 147 N. Y. 348 ; *Lougheed* v. *D. B. Church*, 58 Hun, 364 ; *Shipman* v. *Rollins*, 98 N. Y. 311 ; L. 1887, ch. 310 ; L. 1889, ch. 42.) The contract made with Mr. Hayden for the conveyance of the mansion house and grounds to him as compensation for his services in securing the estate in remainder for the McGillis children, is valid as against the Jarvis infant. (*Aspinwall* v. *Sacchi*, 57 N. Y. 331 ; *Kent* v. *Church of St. Michael*, 136 N. Y. 10 ; Code Civ. Pro. § 66 ; Pom. Eq. Juris. §§ 1238, 1239 ; *Benedict* v. *Gilman*, 4 Paige, 58 ; *Putnam* v. *Ritchie*, 6 Paige, 390 ; *Wetmore* v. *Roberts*, 10 How. Pr. 51 ; *Mickles* v. *Dillaye*, 17 N. Y. 80 ; *Miner* v. *Beekman*, 50 N. Y. 337 ; *Thomas* v. *Evans*, 105 N. Y. 601 ; *Shearer* v. *Field*, 6 Misc. Rep. 189 ; *McSorley* v. *Larissa*, 100 Mass. 270.)

HAIGHT, J.   This action was brought for the partition of real estate and for the enforcement of a lien by the defendant Hayden on the interests of the infant defendant, Morrison M. E. Jarvis.

William Caldwell died in the year 1848, leaving a last will

and testament, in which he devised certain property in Albany and Warren counties, in this state, to his daughter, Eliza McGillis, for life, and in case her husband survived her, to him for life, and then providing, " From and after the decease of both my said daughter and her said husband, I give, devise and bequeath the remainder, or fee simple in said property, to the lawful issue of my said daughter then living, in such relative proportions (if such issue consist of more than one person) as they would by the laws of the State of New York have then inherited, or taken the same from her, in case she and they were then native-born citizens of said state and she had then died intestate, lawfully seized of said property in fee simple." By another provision he appointed his son-in-law, John McGillis, trustee of the estate devised to his daughter for life, authorizing him to take possession of the property, to receive the rents, issues, interests and profits thereof and to apply the same to the use of his daughter during life. Eliza McGillis was married on the 17th day of May, 1836, to John McGillis, an alien and a resident of Canada, where she resided with him. She survived him and died in the year 1893. At the time of the death of her father, the testator, she had four children, Mary Charlotte, William H., John and Elizabeth, who were aliens. Elizabeth died without issue in 1890. After the death of the testator Eliza McGillis had four more children, Ewen, Margaret Louise, Robert A. and Mary Sophia. Margaret Louise married John H. Jarvis and died intestate on the 1st day of May, 1891, leaving her surviving the infant defendant, Morrison M. E. Jarvis, her only heir at law. It will thus be seen that Eliza McGillis left as her surviving issue six children, three born before the death of the testator and three after, and one grandchild, the son of a deceased daughter. The children born before the death of the testator will be spoken of hereafter as the first-born, and those born after his decease, as the after-born children.

In the year 1850 an action was brought by the executors to obtain a judicial construction of the testator's will. In that

68

action Eliza McGillis, her husband and her four children then
living were made parties defendants.    Upon the trial of the
action a judgment was entered in which it was adjudged that
the devise to Eliza McGillis for life was valid, she not being
an alien, but that the devise to her husband and to her chil-
dren, all of whom were aliens at the time of the death of the
testator, was void, and that they had no interest, actual or con-
tingent, in the estate.    (See *Beck* v. *McGillis*, 9 Barb. 35;
2 R. S. 57, sec. 4.)    After the termination of this action,
another action was brought to partition the real estate in War-
ren county, in which Mrs. McGillis was made a party, but her
children were not.    In that action judgment was entered for
a partition of the property, directing that the portion devised
to Mrs. McGillis be set off to her for life, with the fee therein
to the heirs at law of the testator.    But no order confirming
the report of the commissioners was made or filed.  .

   In 1887 the legislature passed an act, providing as follows :
" All the estate, right, title and interest which the people of
the state of New York now have or may hereafter acquire,
in and to the lands devised by William Caldwell of the city of
Albany in this said State of New York, to his daughter Eliza
McGillis for life, and then to her husband John McGillis for
life, should he survive her, and from and after their decease, to
the lawful issue of said Eliza McGillis then surviving, by reason
of the alienage of such issue, is hereby granted, released, con-
veyed and quitclaimed to the said lawful issue of said Eliza
McGillis now or hereafter born and their heirs and assigns
forever, and they are hereby authorized to take, hold, sell and
convey said land and premises, or any interest they or either
of them may have therein, in the same manner and with the
same effect as if they were citizens of the United States, and
had been such citizens at the time of the death of said
William Caldwell."    (Laws 1887, chap. 310.)    The first-born
children of Mrs. McGillis then conveyed to her after-born
children all their interest in the property in question, the after-
born children agreeing to equally share with them in such prop-
erty should they succeed in establishing their title thereto.

Thereupon an application was made to the Supreme Court, in behalf of the after-born children, for permission to intervene in the action of *Van Cortland* v. *Laidlay*, known as the partition action, as plaintiffs in a cross-action against the heirs at law of William Caldwell. This relief was granted, and in that action it was adjudged that the fee or remainder in the property partitioned and set apart to Eliza McGillis for life is "vested in and owned by the lawful issue of the said Eliza McGillis, born subsequent to the death of William Caldwell, and their assigns, in the proportions provided and as specified by the said William Caldwell, deceased, in his said will and codicil, and the said heirs at law of William Caldwell, deceased, and their heirs, devisees and assigns, are hereby forever barred of all title or claim of title thereto, of every name and nature." This judgment was affirmed in the General Term (59 Hun, 161), and subsequently in this court, on consent of the parties, but the infant defendant, Morrison M. E. Jarvis, was not a party to that action.

The interlocutory judgment entered herein adjudges that Morrison M. E. Jarvis is entitled to one-seventh of the property. It is claimed in his behalf that he is entitled to what would have been his mother's portion had she lived; that he takes under the will and not from her; that she being one of the four after-born children he is entitled to one-fourth of the estate, instead of one-seventh, and is not bound by the agreement made by her, to share equally with the first-born children. In determining this question we are somewhat embarrassed by the litigation which has preceded this action. We have, therefore, thought it wise to first consider the question independently of the prior litigation, and then the effect which should be given to the former judgments.

The pivotal question in the case arises upon the construction which should be given to the provisions of the will, and is as to whether the remainder, after the death of the testator, was vested or contingent. In considering this question we must bear in mind the well-settled rule, that if the language of the devise is doubtful, resort should be had to the primary canon

of construction, which is that the intention of the testator, collected from the entire will, must prevail, and the general rules adopted by the courts in aid of the interpretation must give way where their application in a particular case would defeat the intention. If futurity is annexed to the substance of the gift, the vesting is suspended; but where the gift is absolute and the time of payment only is postponed, the gift is not suspended, but vests at once. (1 Jarman on Wills, 759; *Warner* v. *Durant*, 76 N. Y. 136; *Smith* v. *Edwards*, 88 N. Y. 92–103; *Miller* v. *Gilbert*, 144 N. Y. 68–73; *Matter of Baer*, 147 N. Y. 348–354; *Matter of Embree*, 9 App. Div. 602–605; affirmed in this court in 154 N. Y. 778.)

Under the statute, future estates are either vested or contingent. They are vested, when there is a person in being who would have an immediate right to the possession of the lands, upon the ceasing of the intermediate or precedent estate. They are contingent whilst the person to whom, or the event upon which they are limited to take effect, remains uncertain. (1 R. S. 723, section 13.) The statute further provides that "every devise of any interest in real property, to a person who, at the time of the death of the testator, shall be an alien, not authorized by statute to hold real estate, shall be void." (2 R. S. 57, section 4.) All the children of Mrs. McGillis in being at the time of the death of the testator were aliens; they consequently could not take under the will, and there could be no vesting of the remainder in them. If there was any vesting of the remainder, it necessarily must have been in the heirs at law; for as to the remainder, if vested, he must be deemed to have died intestate, in which case the estate would descend under the statute to the heirs at law. But in cases of doubtful language a person ordinarily will not be held to have intended to die intestate if the provision is fairly and reasonably capable of a different construction.

Upon referring to the provisions of the will, we find that it provides that "from and after the decease of both my said daughter and her said husband, I give," etc. Here we have

the first expression of his intent.  He does not make a present gift upon his death, but postpones it from and after the decease of his daughter and her husband.  It is true that the words "from and after," standing alone, have often been held not to indicate an intention to postpone the vesting of an estate, especially where it was apparent from the other provisions of the will that a vesting was intended.  (*Hersee* v. *Simpson*, 154 N. Y. 496.)  We, therefore, do not rest our conclusion upon these words alone, but consider them in connection with that which follows, from which it appears to us his intention was apparent; he then proceeds — "I give, devise and bequeath the remainder of, or fee simple in, said property to the lawful issue of my said daughter *then* living."  In other words, he gives the remainder to the issue of his daughter living at the time of her decease and that of her husband, "in such relative proportions (if such issue consists of more than one person) as they would, by the law of the state of New York, have *then* inherited, or taken the same from her, in case she and they were *then* native-born citizens of said state and she had *then* died intestate, lawfully seized of said property in fee simple."  He not only gives to the issue then living, but he leaves the proportion or share which each is to take, to be determined by the laws of the state which shall be in force at the death of his daughter and her husband, providing for its distribution under such laws in the proportion in which it would descend, upon the assumption that his daughter was at that time the owner of the property in fee simple.  It was not known at the time of the testator's decease which would survive the other, the daughter or her husband.  It was not known and could not then have been ascertained what person or persons would be then living, if any, of the lawful issue.  It consequently follows that the person to whom, or the event upon which the estate was limited to take effect, was uncertain, and, therefore, the remainder was contingent. If the remainder were contingent, the heirs at law took no interest in the estate upon the death of the testator. It could not, then, be determined who the heirs at law would

be, or what provisions of the statute would in the meantime be adopted.

We come to a consideration of the rights of the parties when the life estates terminated at the death of Mrs. McGillis in 1893. Upon the happening of that event, the persons who are entitled to take the estate in possession became fixed and certain. In the meantime our statutes had been changed by the adoption of chapter 42 of the Laws of 1889, which provides that "the foreign born children and descendants of any woman born in the United States, and notwithstanding her marriage with an alien and her residence in a foreign country, shall be entitled to take, hold, have, possess, enjoy, convey and devise real estate situated in this state, in the same manner, and to the same extent, and with the same effect, as if such foreign-born children and descendants were citizens of the United States ; nor shall the title to any such real estate which has descended or which shall descend, or which has been or shall be devised or conveyed, to such woman or to such foreign-born children or descendants, be impaired or affected by reason of her marriage with an alien, or the alienage of such children or their descendants ; provided that the title to such real estate shall be or shall have been derived from or through such woman, or from or through some ancestor of such woman, which ancestor shall be or shall have been a citizen of the United States."

The testator was a resident and a citizen of the United States. Mrs. McGillis was born in the United States ; she married an alien and thereafter resided in a foreign country, where her children were born, and the estate came through her ancestor. The case is brought squarely within the provisions of this statute. As we have shown, there was no outstanding vested remainder in the way of its operation and application to the provisions of this will. It, in effect, amends the provision of the Revised Statutes making void a devise to a person who, at the time of the death of the testator, shall be an alien, so that the provisions of that statute no longer apply to the foreign-born children of married women born in

this country. Under the statute existing at the time of the death of Mrs. McGillis, the estate, if it had been hers and she had died intestate, would have descended to her children, the infant Jarvis taking his mother's portion ; his share would consequently have been one-seventh of the estate.

It remains to be ascertained whether the former adjudications affect the result reached by us upon the construction of the will. In the first action it was adjudged that the first-born children of Mrs. McGillis had no interest in the estate, actual or contingent. These children were infants at that time, but are doubtless estopped by the judgment from now bringing in question any matter that was there adjudged and determined which the court then had the power and the jurisdiction to determine. But, as we have seen, upon a proper construction of the will, the remainder was contingent and not vested. It was not, therefore, a devise of property to a person who, at the time of the death of the testator, was an alien, but was a devise to a class of persons who, forty-five years thereafter, would occupy the relation of issue to Mrs. McGillis, and whose identity could not then be ascertained and determined. The first-born children were issue, it is true, but they might not survive their mother, and they might leave children or grandchildren who would, upon her decease, be her issue and entitled to take under the will.

It further appears from the express provisions of the will that such issue was to take, under the laws of the state of New York then in force, such proportion as under the statute they would be entitled to take in case their mother was lawfully seized of the property in fee simple at the time of her decease. The devise was, therefore, subject to and in a measure dependent upon future legislation, the character of which the court at that time could not ascertain or provide for. It could, therefore, only inquire as to the rights of these children under the statutes existing at that time, and such must be understood to be the force and limit of that judgment, and in so far as it adjudges the remainder to belong to the heirs at law the court exceeded its powers.

The first legislation upon the subject, to which reference has been made, contemplates an interest in the estate which has reverted to, and become vested in, the People of the state. This is upon the theory that the provisions of the statute making void the devise of real property to a person who is an alien at the time of the death of the testator, does' not apply to the after-born children of Mrs. McGillis ; that, at common law, such children could take under the will, although aliens, subject, however, to the interest of the People, to whom the remainder in fee had escheated. ( *Wadsworth* v. *Wadsworth,* 12 N. Y. 376.) By this enactment the People release to all the children of Mrs. McGillis, surviving her at the time of her decease, all of the interest of the state in the property, and grant, convey and quitclaim to them all title which, by reason of the escheat, is vested in the People. It is claimed that this enactment has all the force and effect of a deed transferring the property to the issue of Mrs. McGillis.

It was upon this theory that the cross-action was brought on behalf of the after-born children. As we have seen, the first-born children conveyed their interests to the after-born children, who agreed to share with the former any interest in the property to which they should succeed in establishing title. The property which it is claimed had escheated to the state had, by the enactment referred to, been released and conveyed to the first-born, as well as the after-born, children of Mrs. McGillis. The first-born, therefore, claimed an interest which they could convey, which came from the People of the state, and in that action, based upon the conveyances of the first-born children, it was adjudged that the fee or remainder of the property set apart to Mrs. McGillis for life vested in her after-born issue. Here, it will be observed, by this adjudication we have a vested remainder, but this vesting of the estate comes from the legislature, through whose act the state conveys its escheated interest. Herein arises the confusion in the case. Under the will, as we have construed it, the remainder was contingent, and so remained until the death of Mrs. McGillis, while under the

former adjudication, the estate in remainder had escheated to the People of the state, who in turn had released and conveyed the same to the issue of Mrs. McGillis, who, under the provisions of that statute, took vested remainders. We quite agree with the court in the cross-action, so called, in its construction of the act of 1887, that whatever interest the People had to convey, and which passed under the provisions of that act, vested in the then living children of Mrs. McGillis, subject to open and let in children thereafter born. This conclusion, however, does not help the appellant Jarvis; for as to him the result would be the same; he, instead of taking under the will, upon the death of his mother, took as heir at law her vested interest. This, under the judgment in the cross-action, was a one-fourth interest, but subject to her contract, which she, having a vested interest, had the power to make with the first-born children, or those who survived, with whom she agreed to share the property recovered. We thus have the two titles, one coming through the will, which the act of 1889 validates as to the issue of Mrs. McGillis, and the other through the special act of 1887, which conveys to her children the title of the state, and which is sustained by the judgment in the cross-action. Inasmuch as the same result is reached with reference to the infant's interest in either case, we should not undertake to choose between the two titles were it not for the fact that another question has arisen, which renders such a determination necessary. The judgment in the cross-action was affirmed in this court by consent of the parties. We do not, therefore, regard ourselves as committed upon the question or bound by the adjudication then made, although the parties in that action may be.

The remainder being contingent, nothing could escheat or vest in the state until the life estate terminated. Upon the happening of that event general laws intervened, under which these children were permitted to take the estate in possession. The state, therefore, in 1887, had no estate which it could convey.

69

The remaining question has reference to the equities of the defendant Henry W. Hayden, as attorney at law, who entered into a contract with the children of Mrs. McGillis, in which Margaret Jarvis, the mother of the defendant Morrison M. E. Jarvis, joined, in which he undertook to establish the title of the McGillis children to the property in question, in consideration of the conveyance to him of a parcel of land known as the mansion house lot. In carrying out this contract he procured from the legislature the passage of chapter 310 of the Laws of 1887, and thereafter instituted the cross-action, to which allusion has already been made, and obtained the judgment therein to which we have referred, establishing the rights of these children to the property, and forever barring the claims of the other heirs at law. A warranty deed of the mansion house property was thereupon executed to him by the children of Mrs. McGillis, including the mother of the defendant Jarvis. After the carrying out of the provisions of the contract and the conveyances aforesaid, the appellant Jarvis was born, and his mother died, and it is now claimed in his behalf that he is entitled to have the mansion house property partitioned, and to recover his share thereof.

The referee, in substance, has found as facts that the infant defendant Jarvis is bound by the agreement and deeds with the defendant Hayden as fully as though he had been of age and a party to them all, they having been made for his benefit and having resulted in securing to him his share of said remainder, and being in all respects just, fair and reasonable ; that he has no interest whatever in the premises conveyed to the defendant Hayden by his mother and others in his behalf, as said Hayden's fees for conducting the litigation by which the title of the McGillis issue was established, and which were conveyed to him by the deeds fully set forth in the complaint herein, and that the said defendant Hayden's title to said premises so conveyed to him is perfect as against the infant defendant Jarvis and the lawful issue of Mrs. McGillis as a class, upon facts appearing in the record of this case ; and also that the defendant Hayden has an attorney's lien

upon the premises conveyed to him as and for his fees, and that, if the defendant Jarvis had any interest in the premises, such interest would be subject to be defeated by the attorney's lien.

The Appellate Division reversed the judgment of the referee in so far as it established the title of Hayden to the mansion house property; but in its opinion it is stated that the services of Mr. Hayden inured to the benefit of the defendant Jarvis; that the agreement made by the children of Mrs. McGillis, to convey to him the mansion house property in consideration for such services, was fair and equitable, and that they felt inclined, if possible, to sustain the conclusions of the referee in reference thereto; that they, however, had with reluctance reached the conclusion that it was beyond the power of the parties who made the contract to convey or affect the interests of the defendant Jarvis, and that Hayden had no claim for legal services as against him which could be enforced at law.

If the mother of the defendant Jarvis took a vested remainder from the state through the provisions of chapter 310 of the Laws of 1887, she had the power to sell and convey, or to contract with reference to the same; and upon her death her son would take through her, subject to the contract which she had made. But this situation has not met with our approval, as we have already indicated. There is, however, another view upon which we think the claim of Hayden may properly be sustained. In the first place we have the citizen and resident heirs at law making claim to this property as against these alien children and issue of Mrs. McGillis. Mrs. McGillis was becoming aged and liable to die, and her children were aliens. Under the will, distribution was to be made according to the laws of the state which should then be in force. If her children were to take under the provisions of the will, it was apparent that legislation was necessary. It was under these circumstances that the services of Hayden were contracted for. The mother of the defendant Jarvis was at that time one of the living issue of Mrs. McGillis and represented one

of the class of issue referred to in the will. She joined in the contract with Hayden, and in so doing she claimed to represent, not only her own interest, but that of her children who should thereafter be born to her. While such after-born child may not be bound under the doctrine of representation, for the reason that Mrs. Jarvis had no vested interest, under the authority of *Kent* v. *Church of St. Michael* (136 N. Y. 10) we think he may be bound upon the theory that Hayden had an equitable lien. As we have already shown, legislation was not only necessary, but an adjudication disposing of the claims of the heirs at law was also thought advisable. Hayden undertook the securing of this property for distribution, under the will of the testator to Mrs. McGillis' issue. He was successful in his efforts, and the McGillis issue, as a class, then living, united in his payment by conveying to him the mansion house property. The appellant Jarvis was after born, but he receives the benefit of the services rendered for the estate. If Hayden had expended money in the repairs and preservation of the property, under the circumstances there would be no doubt about the power of equity to reimburse him out of the property. (*Putnam* v. *Ritchie*, 6 Paige, 390; *Ford* v. *Knapp*, 102 N. Y. 135; *Cosgriff* v. *Foss*, 152 N. Y. 104–108.)

In 2 Story on Equity, at section 1237, it is said: "Courts of equity have not confined the doctrine of compensation or lien for repairs or improvements to cases of agreement or of joint purchases; they have extended it to other cases where the party making the repairs and improvements has acted *bona fide* and innocently, and there has been a substantial benefit conferred upon the owner so that, *ex æqua et bona*, he ought to pay for such benefits."

Is the situation changed by reason of his having spent money and time in preserving the property to these children from the claims of others? It seems to us that the principle is the same, and that the equities which control in one case should be recognized in the other. The contract having been found to be fair and reasonable, it follows that the equitable

lien of the defendant Hayden equals the distributive share of the infant Jarvis in the mansion house property, and that the said Jarvis consequently has no interest therein to be partitioned.

The questions submitted for our determination, with the answers which are given thereto, are as follows:

*First.* Whether the infant defendant, Morrison M. E. Jarvis, is seized of and owns an undivided one-seventh, or an undivided one-quarter interest in the premises sought to be partitioned herein.   Answered, one-seventh.

*Second.* Whether the infant defendant, Morrison M. E. Jarvis, owns an undivided one-seventh interest, or an undivided quarter interest, or any interest whatsoever in the premises conveyed to the defendant Henry W. Hayden for his fees, subject to a lien in law or equity in favor of the defendant Henry W. Hayden.   Answered, it is subject to a lien in equity.

*Third.* Whether the defendant Henry W. Hayden has or has not a perfect title, as against said defendant Morrison M. E. Jarvis, to the premises conveyed to him for his fees. Answered, he has a good title.

*Fourth.* Whether the infant defendant, Morrison M. E. Jarvis, out of his interest in the premises sought to be partitioned herein, ought equitably to contribute ratably toward the reasonable fees and expenses of the defendant Henry W. Hayden for the services rendered by him in establishing the title of the lawful issue of Eliza McGillis as a class as against the heirs of William Caldwell to the said premises sought to be partitioned herein.   Answered, he should.

The order of the Appellate Division, in so far as it reverses the judgment entered upon the report of a referee, should be reversed, and the judgment as entered upon the report of the referee affirmed, with costs to all parties payable out of the estate.

All concur, except O'BRIEN, J., who dissents from the proposition that there is a lien upon the estate of the unborn infant, and BARTLETT, J., not sitting.

Judgment accordingly.