CATHARINE KINKEAD

*v.*

JEROME A. RYAN and GEORGE T. MATHEWS.

[Submitted December 24th, 1902. Decided January 14th, 1903. Filed April 6th, 1903.]

1. Under a will making a devise to testator's wife for life, and after her death to his four children, with provision that if any of the children die before her, then, on the wife's death, the share which would have gone to the deceased child, if living, shall go to his (the child's) heirs, a child takes a vested remainder in fee in one-fourth of the lands, subject to be devested by his death before his mother's, so that his interest may be sold on execution during the life of his mother.

2. One who is tenant for life of land, and also tenant in remainder of an interest therein, may, in either capacity, redeem the land, and be subrogated to a lien on the interest of each of the other remaindermen for his share of the redemption money.

3. The payment of a mortgage on land by the tenant for life, who was also a tenant in remainder of an interest in the land, made after she had made her will giving all her property to one of the tenants in remainder, will not be presumed to be a gift to both the other tenants in common, though she immediately caused the mortgage to be canceled of record.

4. Though one who was rightfully in possession of land as a life tenant and owner in fee of a third interest therein, who, after making a will giving all her property to one of the other two remaindermen, paid a mortgage on the land, and took no steps during the seven remaining years of her life to enforce her right to a lien on the interest of the other remainderman, who was an infant and her grandchild, the devisee is not barred by laches from enforcing the right to the lien.

5. The life tenant in lands and owner in fee of a third interest therein by paying a mortgage thereon becomes in equity the holder of the mortgage as against the other remaindermen, so that the statute of limitations does not apply to a suit to enforce her right to a lien on their interests for their shares of the mortgaged debt.

On bill for partition and incidental relief.

This is a bill for partition and incidental relief by way of subrogation to a mortgage on the premises.

The complainant is one of the four children of Christopher Mathews, who died seized of the premises, in 1875, testate of a will, by which he devised them to his widow, Catharine, for life, and at her death to his four children, namely, the defendant George T. Mathews; the complainant, Catharine; his daughter Mary Ann, the wife of one Ryan, who afterwards died, leaving the infant defendant Jerome A. Ryan as her sole heir-at-law; and his son Christopher A. Mathews, who died intestate.

The widow died in November, 1901, testate of a will which devised all her estate, real and personal, to the complainant and appointed her sole executrix.

By the death of Christopher A. Mathews intestate his interest in the premises descended to the three survivors, increasing their shares to one-third each.

The complainant admits that the defendant Jerome A. Ryan is entitled to one-third of the premises, and this is all that is claimed on his behalf. She claims herself one-third by the same title, and she claims the remaining one-third, which once belonged to George T. Mathews, by the following chain of title:

A judgment recovered against George T. Mathews by the Middlesex Quarry Company in the circuit court of Hudson county on March 4th, 1878, and execution issued thereon, directed to the sheriff of Hudson county, and advertisement and sale and conveyance by the sheriff to the Middlesex Quarry Company; a conveyance by that company to Catharine Mathews; an assignment by the same company of its judgment against George, and a devise by Catharine Mathews to the complainant.

The efficiency of this chain to convey the title is disputed by George T. Mathews, on the sole ground that, at the time of the entry of the judgment and the conveyance by the sheriff, his interest in the premises was, by the true construction of the will of Christopher Mathews, contingent, and hence that no title passed.

The incidental relief demanded by the bill arises in this way: At the death of the testator the property was subject to two several mortgages—one, held by the Equitable Life Assurance Society, for $5,000, covering one part of the premises, which was paid in full by the executors; the other, for $4,000, held by

the same society, covering another portion of the premises, upon which the executors paid $1,500, leaving due thereon $2,500. On the 1st of March, 1894, Catharine Mathews, the life tenant, paid the balance of $2,500 due on this last mortgage, and directed her counsel to have it canceled of record, and it was so canceled. The complainant claims the right in equity, as universal devisee and legatee of her mother, Catharine, to be subrogated to the mortgagee as holder of this mortgage, and to charge against the share of the infant defendant one-third thereof—$833.33—subject to a proper accounting for the rents.

*Mr. Charles L. Corbin,* for the complainant.

*Mr. Henry V. Condict,* and *Mr. Paul E. Jones* (of the New York bar), for the defendants.

PITNEY, V. C.

All the parties claim through the will of Christopher Mathews. The complainant claims one-fourth by direct devise; she claims a one-twelfth by descent as heir-at-law of her brother Christopher Alfred Mathews, and as to these there is no dispute. She claims another one-third as follows: A judgment against her brother George, and an execution and sheriff's sale thereunder and conveyance to her mother, Catharine Mathews, the widow of the testator, and by devise from her mother.

The question is whether the legal proceedings just mentioned were efficient to convey the title of George, who is still living, to his mother, and that depends upon the true construction of the will of Christopher Mathews. The clauses to be considered in that connection are as follows:

"*Third.* I give, devise and bequeath unto my beloved wife, Catharine Mathews, all my estate, both real and personal, and wheresoever situated, for and during the term of her natural life.

"*Fourth.* After the death of my said wife I give, devise and bequeath all my estate, both real and personal, unto my beloved children, George Thomas, Christopher Alfred, Mary Ann and Catharine, and any other child of mine that may be born hereafter, share and share alike, and to their heirs and assigns forever.

"*Fifth.* If any of my said children should die before my said wife, then it is my will that upon my wife's death the share of my said estate which would have gone to such deceased child. if living, shall go to the heirs-at-law of such deceased child."

Was the estate in George vested before the death of his mother and at the time the judgment was recovered, so that he himself could have conveyed it; or was it contingent upon his surviving his mother? I think the authorities are clear that, under the fourth clause, standing by itself, the estate was vested. The words "after the death" do not have the effect of postponing the vesting. There was here no contingency as to the person in whom the estate would vest, nor as to the event upon which it would vest. The death of the mother was certain.

A case quite in point is *Green* v. *Howell, 1 Vr. 326; S. C., 2 Vr. 570,* where the bequest was to the sister of the testator of $1,000, to be paid annually to her during her natural life, "and after her decease, I give and bequeath the said $1,000 to her two daughters, Deborah and Sarah, equally to be divided." That was held, in the supreme court, to give a vested interest to the daughter who survived the testator, but died before her mother; and the fund was given to her administrator. Mr. Justice Vredenburgh, speaking for the supreme court, quotes *Rop. Leg.,* as follows:

"When the absolute property in a fund is bequeathed in fractional interests in succession, at periods which must arrive, the interest of the first and subsequent takers will vest together."

That judgment was affirmed by the court of errors and appeals, in an opinion by Chancellor Green, and reference made, with approbation, to the case of *Packham* v. *Gregory, 4 Hare 398,* which, it will be seen, is precisely in point.

Another case is *Beatty's Administrator* v. *Montgomery's Executor, 6 C. E. Gr. 324.* There the bequest was:

"From and after the death of my wife, I give and bequeath the principal sum of $6,000 to my sister Eliza Beatty's children, as follows: to James M. Beatty, the sum of $3,000, and to William Beatty and Wesley Beatty, each the sum of $1,500; and in case of the death of one or more

of the said legatees, James, William and Wesley, I give and bequeath the share of such deceased legatee to the survivors or survivor of said legatees."

That was held by Chancellor Zabriskie to give the children an immediate vested estate, and although each of the persons named died in the lifetime of the tenant for life, it was held that their personal representatives were entitled to the fund. There was in that case an additional clause which provided that, in case of the death of either of the legatees, his share should go to the survivors or survivor; and it was held that such clause did not prevent the vesting. The reasoning of Chancellor Zabriskie, and the cases cited by him, seem conclusive and unanswerable. He there cites the case of *Salisbury* v. *Petty, 3 Hare 85,* where it was held that where legacies were given to two at the death of the legatee for life, with a provision that if either should die leaving issue his share should go to such issue, the legacies vested at the death of the testator, and the share of one who died in the lifetime without issue did not lapse or divert by his death, as the event on which it was limited over had not occurred, but that it went to the representative of the legatee.

Another instructive case is *Van Dyke* v. *Vanderpool, 1 McCart. 198.* Chancellor Green there applies the test as follows: "It is the present capacity of taking effect in possession, if the possession should ever become vacant, not the certainty that it ever will become vacant while the remainder continues, which distinguishes a vested from a contingent remainder." And he refers to the rule that "if the payment or distribution appear to be postponed for the convenience of the fund or property, as where the future gift is only postponed to let in some other interest, the vesting will not be deferred till the period in question."

Other cases in the same direction are *Perrine* v. *Newell, 4 Dick. Ch. Rep. 57; Havens* v. *Seashore Land Co., 2 Dick. Ch. Rep. 365; Nichols* v. *Worden, 10 N. J. L. J. 218,* and *Baldwin* v. *Trowbridge, 17 Dick. Ch. Rep. 468.*

It seems equally clear that this result is not affected by the last clause above cited. The somewhat famous case of *Den* v. *Allaire, Spenc. 6,* seems to settle that point. There the testator

devised tracts of land severally to his three sons, Henry, Charles and Solomon, adding this clause:

"And it is my will that, in case either of my sons before named should die without issue, that his share is equally divided between my surviving sons."

Charles conveyed the land devised to him in his lifetime to one Thompson, through whom the defendant claimed, and died leaving issue, the lessor of the plaintiff, and it was held that the estate was not contingent, but absolute, and his conveyance efficient to vest title in the defendant's grantor. In the case in hand the sheriff's conveyance has precisely the same effect as a conveyance by the defendant George T. Mathews would have had if he had made it at the same time. In *Den* v. *Allaire* it was held that the son Charles took an estate in fee-simple, defeasible in the event of his death without issue then living. Here the defendant George T. Mathews took an estate in remainder in fee-simple, subject to be devested in case of his dying in the lifetime of his mother.

To the same effect is *Den* v. *Howell, Spenc. 411;* also *Leddel* (improperly reported as *Seddel*) v. *Wills, Spenc. 223,* and *Vreeland* v. *Blauvelt, 8 C. E. Gr. 483.* See, also, *Post* v. *Herbert's Executors, 12 C. E. Gr. 540.*

Against this array of authorities the defendant relies on *Van Tilburgh* v. *Hollinshead, 1 McCart. 32; Den* v. *Demarest, 1 Zab. 525* (at *p. 529*), and *Teets* v. *Weise, 18 Vr. 154,* in our own courts; and *McGillis* v. *McGillis, 154 N. Y. 532,* and *Clark* v. *Cammann, 160 N. Y. 315,* in the court of appeals of New York.

In *Van Tilburgh* v. *Hollinshead* there was a devise to a son for his life, and at his death to go to his *surviving children, according to law,* neither of whom were named. The will was made before the change in the law of descents, and the division of the estate under the will took place afterwards, and the question was whether the estate was to be divided under the old statute or the new one. But the question also arose as to whether the children of the tenant for life took a vested or contingent

interest during his lifetime; and it was held that the force of the word "surviving" was to defer the vesting until the death of the tenant for life. The chancellor states the rule as follows: "That where an interest is given to one for life, and after his death to his surviving children, those only can take who are alive at the time the distribution takes places." The case, clearly, has no application here. The persons who are to take in this case are named in the will.

In the case of *Teets* v. *Weise, 18 Vr. 154,* there was a devise to the testator's daughter during her lifetime, and at her death to all her children, and any issue of any deceased child of his daughter "that may be living at the time of her decease." This was held by the court of errors and appeals to make the estate contingent, on the authority of *Van Tilburgh* v. *Hollinshead.*

In the case of *Den* v. *Demarest, 1 Zab. 525,* the defendant relies on that part of the opinion which is found on page 539, where is found the doctrine of the supreme court in that famous case, which was later reversed by the court of errors and appeals.

The defendant further relies on the case of *Lippincott* v. *Davis, 30 Vr. 241.* That case depended upon the extent and application of our statute which was aimed at the rule in *Shelley's Case;* and the question was whether the devisee named in the will there under consideration did not take a fee-simple; and it was held that he did take a fee-simple, and that his (the devisee's) will, which was made while under the impression that he had only a life estate, must be construed accordingly. The case has no application here.

In *McGillis* v. *McGillis, 154 N. Y. 532,* the devise was after a life estate to a daughter, "to the lawful issue of my said daughter then living." It was held that the estate of the children was contingent upon their surviving their mother, and hence was contingent during her lifetime. The case is clearly distinguishable from the present. In the same volume is found a decision (*In the matter of Brown, 313*) which supports the complainant's position herein.

The other case relied on by the defendant (*Clark* v. *Cammann, 160 N. Y. 315*) dealt with a will which set aside a sum of money

for the use of the testator's wife for life, and after her death a portion of it to the use of his niece

"for and during her natural life, and from and immediately after her decease to pay over and divide unto and among all her children, share and share alike, and to their lawful representatives forever as tenants in common, the issue of any such child who may then be dead to take his or her parent's share;"

and it was held that the children of the niece had only a contingent interest. The case is on the border line, and was decided on its own peculiar circumstances, and comes nearer than any of the others cited by the defendant to support his position. But I think it is distinguishable from the present case; and if it were not, I should feel constrained not to follow it, since it comes in conflict with the well-settled line of decisions in our own state.

My conclusion is that the defendant George T. Mathews took a vested remainder in fee in one-fourth of the lands under the will of his father, subject, however, to be devested in case of his death in the lifetime of his mother. That event not having occurred, his estate is absolute; and it was competent for him, in the lifetime of his mother, to make a valid conveyance of such one-fourth interest; and the judgment, levy and sale by the sheriff, under our statute, had the same effect as if the judgment debtor had made the conveyance, and hence the title of the complainant to that one-fourth share is valid and binding upon him. The one-twelfth which he derived by descent from his brother passed, of course.

The next question relates to the right of the complainant to be subrogated to the holder of the mortgage which was paid by her mother.

At the time the balance of $2,500 was paid by the tenant for life, she was not only tenant for life, but she was tenant in remainder of one-third interest in the premises. In either and both capacities she was clearly entitled to redeem the premises from this mortgage, without regard to the wishes of the remaindermen or the other tenants in common (*Freem. Co-ten. & P. (2d ed.)* §§ *176, 371*); and the only right which the person

so redeeming acquires against his other co-tenants or the remainderman or remaindermen, as the case may be, is to impose upon the estate of such party a lien for his proper share of the redemption money. The fact of redemption does not create any personal liability against the other party. *Harr. Subr.* (*ed. of 1889*) §§ *696, 697,* also § *117; Sheld. Subr.* (*2d ed.*) § *207 a,* and cases cited. The right of subrogation in equity in such case follows naturally and necessarily from the circumstances of the case, and not out of any notion of contract. *Miller's Appeal, 119 Pa. St. 620; 3 Pom. Eq. Jur.* (*2d ed.*) §§ *1211, 1418, 1419;* and see the elaborate note of Professor Pomeroy to § *1419.* And see *Coudert* v. *Coudert, 16 Stew. Eq. 407,* and *De Concillio* v. *Brownrigg, 6 Dick. Ch. Rep. 532.*

Now, it will be observed that there is here no question of suretyship, but the case presents an example of the equitable doctrine of pure subrogation arising out of the circumstances of the case, without any room for the presumption of a promise to pay, such as arises out of cases of suretyship.

The next question is whether there is anything in the case to justify the presumption that the discharge of the mortgage was a gift to all the tenants in remainder. The redemption was in 1894. The tenant for life made her will in 1888, and at that time she was seized of the share of her son George; so that the case must be considered as one of intention between her and her grandchild, Ryan, the infant defendant, his mother having died in 1885. Counsel for the defendants placed great reliance upon the fact that she caused the mortgage to be immediately canceled of record. At first I was inclined to think that that circumstance did have some significance in favor of the notion of a gift; but further consideration has changed my mind, and led me to the conclusion that it has no significance whatever. Mrs. Mathews was entitled to have her property shown by the record to be free and clear of encumbrance. That may have been a matter of vital importance to her, either for purposes of obtaining general financial credit in the community, or for the purpose of being able to convey her interest in the premises if she saw fit so to do. The fact of cancellation is no more significant than would have been the taking of a formal release of the mortgage; and the

authorities to which I have referred show that the acceptance of
such a release would not have the effect of extinguishing the
lien in favor of the parties other than the one making payment.
Undoubtedly the mortgage was, by its cancellation, destroyed as
a lien at law, and, as before stated, no personal action, either at
law or in equity, arose in favor of Mrs. Mathews against either
of her children or her grandchild. Her right is one purely in
equity to be subrogated to the mortgagee, and it arises, not out
of the possession of the mortgage, or out of its being either
canceled or uncanceled, or formally released, but out of the mere
fact of the payment of the mortgage and the discharge, by such
payment, of the lien upon the lands of her tenants in common
or remaindermen, as the case might be. I conclude, therefore,
that the mere cancellation of the mortgage has no significance.

Of course, a different question would arise if third parties
had acquired an interest in the premises after the cancellation
of the mortgage.

Then with regard to the delay of Mrs. Mathews for seven years
to take any proceedings to enforce her right against her grand-
child. Now, at that time, the grandchild was an infant, and his
grandparent was rightfully in possession of the premises as tenant
for life and as the owner of one-third. Her relations to the com-
plainant, as appears by the evidence, were such that she had no
reason to enforce the lien as against her, and nothing was to be
gained to Mrs. Mathews by enforcing it against her grandchild,
who was entirely too young to take care of his own interests;
so that the circumstances did not call for any action, but rather
forbade it. No harm has come to the grandson by the forbear-
ance of his grandmother, and so I think there was no laches.

The remaining question is whether the statute of limitations
does not apply; and that depends on whether Mrs. Mathews
was, by the payment, subrogated to the rights of the mortgagee.
Upon that question there is much authority. Until the case of
Copis v. Middleton, 1 Turn. & R. 226, decided by Lord Eldon,
and the case of Hodgson v. Shaw, 3 Myl. & K. 183, decided by
Lord Brougham, the rule was well established in England that
the surety paying off a specialty debt, whether secured by mort-
gage or not, was entitled, as against the principal debtor, to all

the privileges of the original creditor, and those privileges, even without a mortgage, were valuable, giving him, in many instances, a preference in payment out of the assets of the decedent. The effect of the decision in *Copis* v. *Middleton* was so serious that the English parliament intervened and restored the original rule.

The clear trend of decisions in the United States, from the beginning, has been to subrogate the person paying the debt to all the rights of the creditor; and, indeed, this is inherent in the very idea of subrogation. It is so stated by Mr. Sheldon in the very first section of his book on "Subrogation." The line of decisions in this country will be found in the American notes to *Dering* v. *Earl of Winchelsea, 1 White & T. Lead. Cas. (4th Am. ed.) 137 et seq.;* and in the note above referred to (*Pom. Eq. Jur.* § *1419*) ; and see *24 Eng. & Am. Encycl. L. 204.* Among the other cases cited in note to *1 White & T. Lead. Cas.* is *Smith* v. *Swain, 7 Rich. Eq. 112,* which appears to be quite in point.

I come, then, to the conclusion that, in equity, Mrs. Mathews, by the payment of the mortgage in question, became, as against the other parties interested in the lands, the holder of the mortgage, and that the statute of limitations does not apply.

There is here no dispute that the mortgage, which was accompanied by a bond executed by Christopher Mathews, had been kept alive by continued payments of interest down to the time when the final payment was made.

The complainant, therefore, is entitled to the relief she seeks against her nephew, the defendant. The hardship on the defendant is, it will be found, not so great as it might have been, when we examine the account of the executor, where it appears that he collected the rents from the premises accruing after the death of the testator to the amount of over $4,000, which clearly belonged to the tenant for life, and which he used, with the other proceeds of the personal estate proper, in paying off one mortgage of $5,000 and $1,500 on account of the other.

The decree will be that the complainant is entitled to a charge upon the share of the defendant Jerome Alfred Ryan of $833.33, with interest from the date of the death of Mrs. Mathews, sub-

ject to an accounting by the complainant for his share of the rents in the meantime, if the complainant has received the same.

I will hear evidence as to whether or not the property is so situate that one-third thereof in value may be set off to the defendant Jerome.