BARBARA MILLER, Respondent, *v.* FREDERICK P. GILBERT
et al., Appellants, et al., Respondent.

The holographic will of G., an illiterate person, contained a provision by
which he gave to his wife "a free and uncontrollable use and occupancy"
of certain houses and lots as long as she continued his widow. If she
ceased to be such by death, then the premises were directed to be sold and
the proceeds equally divided among the testator's four children named
"or their heirs." If the widow ceased to be such by marriage then the
premises were directed to be sold and one-half the proceeds to be hers,
"to be used for her comfort and support so long as she shall live, and
then it shall revert back" to said children, the other half to be equally
divided among them "as aforesaid." In an action for partition of the
premises brought after the death of the widow it appeared that the
children named survived the testator; two of them died before their
mother. *Held,* that there was no equitable conversion, but the fee of
the premises vested upon the testator's death in the four children; that
the direction to sell and divide could not be regarded as a gift, but
simply as a suggested mode of division in lieu of legal proceedings.
Reported below, 3 Misc. Rep. 43.

(Argued November 2, 1894 ; decided November 27, 1894.)

Appeal from order of the General Term of the City Court of Brooklyn, made April 24, 1893, which overruled the appellants' exceptions and denied a motion for a new trial. Also appeal from an order amending the above order.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William Sullivan* and *Hugh A. McTernan* for appellants. The devolution of the property in question must be governed by the rules applicable to personal property, the will effecting an equitable conversion of the realty into money on the termination of the widowhood of the testator's wife, whether by marriage or death. (*Moncrief* v. *Ross,* 50 N. Y. 431; *Teed* v. *Morton,* 60 id. 502; *Fisher* v. *Banta,* 66 id. 468; *Hope* v. *Brewer,* 136 id. 126; *Delaney* v. *McCormack,* 88 id. 174; *Underwood* v. *Curtis,* 127 id. 523; *Fritz* v. *Fritz,* 43 N. Y. S. R. 755; 1 Jarman on Wills, 547–549; *Hood* v. *Hood,* 85 N. Y. 561; *Lent* v. *Howard,* 89 id. 169; *Asche* v. *Asche,* 113 id. 232; *In re Gantert,* 136 id. 106; *Salisbury* v. *Petty,* 3 Hare, 86; *In re Mores,* 10 id. 178; *Crippen* v. *Wolcott,* 4 Mad. Ch. 12; *Houghton* v. *Whigreave,* 1 J. & W. 145; *Harvey* v. *McLoughlin,* 1 Price, 264; *Price* v. *Lockley,* 6 Beav. 180; *Finlanson* v. *Fatlock,* L. R. [9 Eq.] 258; *Hobgen* v. *Neale,* L. R. [11 Eq.] 47; *In re Gregson,* 2 De G., J. & S. 428; *Edwards* v. *Edwards,* 15 Beav. 357.) As the gift did not vest at the testator's death, because it was not to take effect simply on the death of his widow — a certain event — but was contingent on her death without having married — " a dubious and uncertain event " — the children of the sons who died before the widow take as substituted legatees. (*Delaney* v. *McCormack,* 88 N. Y. 174; *Smith* v. *Edwards,* 88 id. 103, 104; *Teed* v. *Morton,* 60 id. 502.) As some of the parties interested in the fund object to a partition suit, this action is not maintainable at all. (*Fritz* v. *Fritz,* 43 N. Y. S. R. 755.)

*F. E. Dana* for respondent. It is claimed by the heirs of Philo and Wilbur Gilbert that this was a conversion into per-

sonal property and a gift at the death of the widow, the life
tenant; that these two sons not being alive at her death, the
property should be sold and their shares distributed to their
respective heirs, and this contention is largely based on the
expression " or their heirs." This is untenable. (2 R. S. 66,
§ 52; *Scott* v. *Guernsey*, 48 N. Y. 106; *Rome* v. *Phillips*,
24 id. 463; *O'Hara* v. *Dever*, 5 Keyes, 338; *Vanderzee*
v. *Slingerland*, 103 N. Y. 47; *In re Wells*, 113 id. 396;
*Embury* v. *Sheldon*, 68 id. 227; *Van Buren* v. *Dash*, 30 id.
393; *Thurber* v. *Chambers*, 66 id. 47; *Downing* v. *Marshall*,
23 id. 366; *In re Tienken*, 131 id. 291; 60 Hun, 417; *Stokes*
v. *Weston*, 142 N. Y. 433; *Campbell* v. *Stokes*, Id. 23; *Nelson* v. *Russell*, 135 id. 137.) There was no devise to an executor nor any trust estate created by the will, and the fee did
vest in the children; it passed to them as heirs of the testator
by operation of law or by the will. (*In re Tienken*, 131 N.
Y. 391; 60 Hun, 417.) The construction of a will shall follow the intent to be collected from the whole will, and the
intention of the testator so ascertained shall prevail. (*Goebel*
v. *Wolf*, 113 N. Y. 305; *Ritch* v. *Hawxhurst*, 114 id. 512–
515; *Lytle* v. *Beveridge*, 58 id. 592–598; *In re Tienken*, 131
id. 391; *In re Gardner*, 140 id. 122.)

*Edgar Whitlock* for McClellan, respondent. In the case at
bar the testator makes no devise of his real estate. In such a
case the fee passed to his heirs at law, said four named sons.
The clause directing a sale and division then becomes not a
gift at the death of the widow, but merely a provision for
a division of the estate among those in whom the fee was
already vested. (*Goebel* v. *Wolf*, 113 N. Y. 412, 413; *Lent*
v. *Howard*, 89 id. 176.) A rule so technical as the one
invoked by the appellants becomes of but little importance
where, as here, it appears that the will was holographic, and,
therefore, not written by one acquainted with legal phraseology. (*Lytle* v. *Beveridge*, 58 N. Y. 592.) Having reference to testator's legal ignorance, it is submitted that the
word " or " should be read "and." (*Roome* v. *Phillips*, 24

N. Y. 463; *Du Bois* v. *Ray*, 35 id. 162–172.)  The law favors a construction which vests remainders, and seeks diligently for such a purpose and intention.  (*Smith* v. *Edwards*, 88 N. Y. 92.)  The will contains no words from which an intimation can be gathered that the testator intended to impress a new character on the estate which passed in fee to his four sons.  (*Parker* v. *Linden*, 113 N. Y. 37, 38; *Matter of Bingham*, 127 id. 296–314.)  If it be conceded that the language of the will did not work an equitable conversion, absolute and imperative, as of the death of the widow, and the proceeds are to be treated as realty, then the words " or their heirs" become either surplusage, or words of inheritance or of substitution.  If either of the first two, the fee in the sons is not changed.  If the third, to wit, words of substitution, then the well-settled rule is invoked that as to real estate, words of survivorship, or the passing of title to one on the death of another, refers to a death in the lifetime of the testator.  (*Livingstone* v. *Greene*, 52 N. Y. 118; *Quackenbos* v. *Kingsland*, 102 id. 128; *Vanderzee* v. *Slingerland*, 103 id. 47; *Snell* v. *Tuttle*, 44 Hun, 324–330; *Goebel* v. *Wolf*, 113 N. Y. 405; *In re Tienken*, 43 N. Y. S. R. 184.)

Bartlett, J.  This is an appeal from an order of the General Term of the City Court of Brooklyn, denying a motion for a new trial made by defendants Frederick P. Gilbert et al.

Also an appeal from an order amending the above order.

This action was brought to partition certain real estate in the city of Brooklyn, of which Raphael Gilbert died seized, and involves the construction of his will.

The testator died June 6, 1863, leaving him surviving his widow and four sons, Philo, Wesley, Henry and Wilbur.

The will is holographic and bears upon its face evidences of having been drawn by one wholly without legal training and of very limited general education.

The clause of the will to be construed reads as follows, viz. :

" Be it known by these premises, to all whom it may con-

cern, that I, Raphael Gilbert, of the city of Brooklyn, in the State of New York and of the United States of America, do give to my wife Maria on the day of my death a free and uncontrollable use and occupancy of my houses and lots situated No. 121 Prospect street, 151 York street and 335 Bridge street, as long as she shall continue my widow, but if she shall cease to be my widow by death, then the aforesaid houses and lots shall be sold and the moneys arising therefrom shall be equally divided among my children, viz. : Philo Baker Gilbert, Wesley Carlo Gilbert, Henry Still Gilbert, Wilbur Fisk Gilbert, or their heirs. But if she shall cease to be my widow by marriage, then the aforesaid houses and lots shall be sold, and one-half of the moneys arising therefrom shall be hers, to be used for her benefit and comfort so long as she shall live, and then it shall revert back to my children and be equally divided among them ; and the other one-half of the moneys arising from the sale of the aforesaid houses and lots, shall be equally divided among my children as aforesaid."

The sons Henry and Wesley survived their mother, and after her death Henry acquired Wesley's share and owns one-half of the real estate in dispute.

The son Wilbur survived the testator but predeceased his mother, having in his lifetime conveyed one-quarter interest in the premises in question to the plaintiff, Barbara Miller.

The son Philo also survived the testator but died before his mother. During his life his alleged interest in one-quarter of the real estate was sold in bankruptcy proceedings and passed to the defendant Carrie G. McClellan.

The question now presented is did the fee of this real estate vest in the four sons of testator at his death, or was there an equitable conversion into money and a bequest thereof to take effect on the death of the widow, thus vesting the shares of the deceased sons, Wilbur and Philo, in their children to the exclusion of plaintiff and the defendant Carrie G. McClellan ?

The court below held the fee vested in testator's four sons at the time of his death.

The heirs of the sons Philo and Wilbur appeal to this court.

The counsel for the appellant urges that there is an equitable conversion and that the bequest to the sons was contingent and not vested, because the gift is found in a direction to divide at a future time.

It has been often held that if futurity is annexed to the substance of the gift the vesting is suspended; but where the gift is absolute and the time of payment only is postponed the gift is not suspended but vests at once. (*Smith* v. *Edwards*, 88 N. Y. 103.)

It is also a well-settled rule that if the language of the bequest is doubtful resort shall be had to that primary canon of construction which holds that the intent of the testator collected from the entire will must prevail; and that general rules adopted by the courts in aid of the interpretation of wills must give way where their application in any particular case would defeat the intention. (*Goebel* v. *Wolf*, 113 N. Y. 412; *Ritch* v. *Hawxhurst*, 114 id. 512.)

On reading testator's will we are satisfied he intended to create a life estate in his wife and vest the fee at his death in his four sons.

It is true the fee is not disposed of in terms, but it is apparent from the general language of the will that the testator supposed he had vested the fee in his sons, and it was his intention to do so.

In the clause where he speaks of his widow ceasing to be such by marriage he says: "The aforesaid houses and lots shall be sold, and one-half of the moneys arising thereupon shall be hers, to be used for her benefit and comfort so long as she shall live, and then it shall *revert back* to my children and be equally divided among them."

It may be fairly inferred from this language that the testator supposed the fee at the time of the sale would be in his sons.

The general scheme of the will is very clear and leads to the same result.

Dealing with his real estate, the testator evidently intended the widow was to have a life estate and the sons the fee; on

the death of the widow, the real estate was to be sold and proceeds divided between the sons; if the widow married, a sale was directed and half the proceeds were divided at once between the sons, and the widow had the use of the other half for life and then principal reverted to the sons. The same disposition practically is made of the personal property.

The scheme of the will is consistent and clear, although the instrument is inartificially drawn. There is no equitable conversion in any event, but, even under the appellants' construction, it is not contended there was conversion from the death of the testator, but from the death of the widow, so the fee at testator's death passed to the four sons.

It is also urged by the appellants' counsel that the words "or their heirs" in the clause of the will under consideration disclose the intent to substitute a deceased son's issue for the son himself in case the latter died at any time before the widow.

It is difficult to say what was in the mind of this illiterate testator when he employed these words; he may have improperly deemed them essential in framing an absolute devise to the sons. (2 R. S. p. 66, § 52.)

It is quite inconceivable that he supposed the words created a substitutionary bequest or devise in the event of the death of a son before his mother, but it may more reasonably be assumed they were ignorantly used; it is a case where the court might well substitute "and" for "or." (*Roome* v. *Phillips*, 24 N. Y. 463; *Jackson* v. *Blanshan*, 6 Johns. 56.)

If these words are given the full force and effect claimed for them, they would fall within the rule of construction that where there is a devise to one person in fee, and in case of his death to another, the contingency referred to is the death of the first-named devisee during the lifetime of the testator, and that if such devisee survives the testator, he takes an absolute fee. (*Stokes* v. *Weston*, 142 N. Y. 433, and cases cited.)

The fee having passed to the sons at the testator's death, as already intimated, the direction to sell and divide cannot be regarded as a gift to take effect at the death of the widow,

but rather a suggested mode of division in lieu of legal proceedings.

The will does not disclose the intention to create a trust or a power in trust, and even fails to appoint an executor.

It is evident the testator intended the sales suggested by him should be made by his sons, or the widow and his sons, as the case might be.

The general principles controlling the case have been recently discussed and applied by this court. (*Matter of Tienken*, 131 N. Y. 391.)

The orders appealed from should be affirmed, with costs.

All concur.

Orders affirmed.