[Civ. No. 894. Third Appellate District.—September 29, 1911.]

In the Matter of the Estate of WILLIAM H. DE VRIES, Deceased. MARION DE VRIES, Devisee and Legatee, Appellant, v. MINNIE L. DE VRIES, Devisee and Legatee, et al., Respondents.

ESTATES OF DECEASED PERSONS—APPEAL FROM ORDER DENYING PARTIAL DISTRIBUTION TO DEVISEE OF REMAINDER—VESTED OR CONTINGENT ESTATE—INTENTION GATHERED FROM WILL.—Upon appeal from an order denying partial distribution of an estate in remainder after the expiration of a life estate in the widow of the testator, on the alleged ground that the remainder is contingent, the decision of the question whether the remainder is vested or contingent must rest on the intention of the testator, which must be gathered from an interpretation of the language of his last will and testament viewed in the light of established and accepted canons of construction.

ID.—DISTINCTION BETWEEN VESTED AND CONTINGENT REMAINDERS.— A future interest is vested when there is a person in being who would have a right, defeasible or indefeasible, to the immediate possession of the property upon the ceasing of the intermediate or precedent interest; and a future interest is contingent whilst the person in whom or the event upon which it is limited to take effect remains uncertain.

ID.—DISTINCTION AS TO CONDITIONS PRECEDENT OR SUBSEQUENT.—The true criterion of a vested remainder is the existence in an ascertained person of a present fixed right of future enjoyment of the estate limited in remainder, which right will take effect in possession immediately on the determination of the precedent estate, irrespective of any collateral event, provided the estate in remainder does not determine before the precedent estate. But it does not necessarily follow that every estate which is subject to a contin-

gency or condition is a contingent remainder. If the condition is *precedent,* the remainder cannot vest until the contingency has happened, and thereby becomes certain. But if the condition is *subsequent* the estate vests immediately, subject to be defeated by the happening of the condition.

ID.—TEST OF CONTINGENT REMAINDER.—It is the uncertainty of the *right* of enjoyment, and not the uncertainty of actual enjoyment, that renders the remainder contingent.

ID.—PREFERENCE IN LAW FOR VESTED ESTATES—DOUBT TO BE RESOLVED IN THEIR FAVOR.—The law prefers to consider future estates as vested; and courts will incline in doubtful cases to construe a devise or legacy as vested rather than contingent, and will give the will that construction if its language will fairly admit of it. The courts have always regarded contingent estates with disfavor; and every interest will be presumed to vest, unless a contrary intention is clearly manifested. If there is the least doubt, advantage will be taken of the circumstances occasioning that doubt to hold that the remainder is vested, and not contingent.

ID.—WORDS EXPRESSIVE OF VESTED REMAINDER—PRESENT BEQUEST UPON TERMINATION OF LIFE ESTATE.—Where the words expressive of the estate in remainder are words of present devise and bequest, "upon the termination of the life estate," the latter words relate only to the time of actual enjoyment, but the remainder is immediately vested.

ID.—GENERAL RULE AS TO WORDS OF PRESENT GIFT.—The use of words of present gift or of language which has the same import or effect is expressly recognized as operating, in the absence of other controlling circumstances, to create a vested interest or estate in the beneficiary in a remainder after the expiration of a life estate.

ID.—CONSTRUCTION OF WILL—VESTED ESTATE—CONTINGENT ESTATE OF WIFE.—Where the will bequeathed all of the testator's property to his wife for life, with remainder over to his sons named, in proportions for the time and upon the conditions expressed, and bequeathed to appellant, upon the termination of the life estate, certain parcels of real estate described, since the appellant was living at the death of the testator, the estate in remainder then became immediately vested in him, and a contingent estate in his wife, created by the will in case of his death without issue, could only vest in her in case of his death without issue before the testator's death.

ID.—LANGUAGE CREATING CONTINGENT ESTATE OF WIFE—DEATH OF SON "PRIOR TO THE VESTING IN HIM" OF ESTATE DEVISED.—The language of the will, "But should my son Marion die leaving no lawful issue, before the death of his wife, Minnie L. De Vries, and prior to the vesting in him of the estate, or interest so devised, then the property which I have already devised and bequeathed to said

Marion shall pass to and vest in and become the property of said Minnie L. De Vries," clearly expresses the intent that the property shall vest in him, if living at the death of the testator, and shall only vest in his widow at the testator's death upon the contingency specified of the husband's death before the death of the testator without issue prior to the vesting of the estate in him, which could only be prior to the testator's death.

ID.—RIGHT OF APPELLANT TO PARTIAL DISTRIBUTION OF VESTED RE-MAINDER—REVERSAL.—It is held that the appellant, having a vested right in real property described in remainder, is entitled to a partial distribution of his estate therein, and an order refusing the same must be reversed.

APPEAL from an order or decree of the Superior Court of San Joaquin County denying a petition for partial distribution. Frank H. Smith, Judge.

The facts are stated in the opinion of the court.

Marion De Vries, Appellant, in *pro. per.*

Nutter & Orr, for Respondents.

HART, J.—The single question submitted on this appeal, which is prosecuted from an order or decree denying the petition of the appellant for a decree of partial distribution of the estate of William H. De Vries, deceased, is whether the remainder to said appellant, provided for by the fourth clause of the last will and testament of said deceased, is vested or contingent.

The court below, two of the judges thereof presiding at the hearing and concurring in the conclusion therein reached, held the remainder so devised to the appellant, Marion De Vries, to be contingent.

The decision of the question presented here must, obviously, rest on the intention of the testator, and, in turn, such intention must be gathered from an interpretation of the language of the last will and testament of the testator.

The language of said testament particularly pertinent to this inquiry reads:

"Second. I give, devise and bequeath all the property of which I may die seized and possessed, both real and personal, to my beloved wife, Mary Jane De Vries, for her natural

life, *the remainder thereof to my sons hereinafter named* in proportions for the time and upon the conditions hereinafter expressed: . . .

"Fourth. Upon the termination of the life estate hereby created in my wife, Mary Jane De Vries, I give and devise unto my son, Marion De Vries, all those certain lots, pieces and parcels of land, situate," etc. . . .

"If my son, Marion De Vries, should precede in death his wife, Minnie L. De Vries, and leave him no lawful issue surviving, and should such death of my son, Marion De Vries, occur before the property herein devised and bequeathed to him *vests in him,* then, all the interests herein and hereby devised and bequeathed to said Marion De Vries shall pass to and vest in and become the property of said Minnie L. De Vries, my son, Marion's wife, absolutely and forever."

The contention of the appellant is that, under the terms of said will, that portion of the estate so devised to him vested in him, by virtue of the provisions of section 694 of the Civil Code, immediately upon the death of the testator.

Reproduced in the transcript on appeal is the written opinion of the learned trial judges, in which they set forth their reasons for the conclusion reached by them adversely to the contention of appellant, and from said opinion we gather that their position is planted principally on their interpretation of the language of the clause of the testament devising to appellant out of the life estate a certain interest in remainder. The argument appears to be that the words, "*Upon the termination of the life estate hereby created in my wife, Mary Jane De Vries,* I give and devise to my son, Marion De Vries, all those certain lands," etc., clearly imply an intention on the part of the testator to fix "the time when said estate is to vest not only in interest but also in possession" as at the termination of the life estate. In other words, it is held by the court below that by use of the words "*upon* the termination of the life estate" the testator intended to say that the interest in remainder to Marion De Vries should not *vest* until *after* the determination of said life estate, and this construction of the testament, in so far as it affects the devise to the said Marion, is sustained, so the reasoning proceeds, by the provision for the wife of said Marion in the

event that the latter should precede in death the former, leaving "him no lawful issue surviving."

We are unable to assent to the construction thus given the instrument in question and the conclusion arrived at by the court below therefrom.

It is, of course, to be conceded that great difficulty often arises in determining whether a vested or contingent remainder was intended by the language of an instrument whose manifest purpose is to carve out of the same estate two or more separate and distinct interests—the one the right to the possession of which is to be enjoyed *in praesenti* and the others *in futuro*. Indeed, it is manifestly a much more simple task to formulate, as the law-writers and the legislature have done, a general distinction between vested and contingent future interests than to apply, in many instances, a distinction to concrete cases. The general definitions of vested and contingent remainders, as given by the law-writers and our code, are sufficiently clear and explicit, yet, after all, the real point of decision in all cases where the question is whether a future interest created by devise or otherwise is vested or contingent is as to the intention of the testator or grantor in that regard, and such intention, as before stated and as is obviously true, must, in cases where construction is necessary, be gathered from the language of the instrument viewed by the light of established and accepted canons of construction. (Civ. Code, sec. 1317 et seq.)

In the case at bar, however, we have, upon a careful scrutiny of the whole testament by the aid of the rules to which we have referred and the reflected light of the adjudicated cases, found much less difficulty in reaching a conclusion as to the intention of the testator with regard to the fourth clause of his will than a mere glance at the instrument seemed to indicate.

But before proceeding to an examination of the instrument itself, we may, with propriety, state a few general rules which apply to inquiries of the nature of the one presented here.

"A future interest is vested," says our Civil Code, section 694, "when there is a person in being who would have a right, defeasible or indefeasible, to the immediate possession of the property, upon the ceasing of the intermediate or precedent interest," and, continues the same code, "a future interest is

contingent, whilst the person in whom, or the event upon which, it is limited to take effect remains uncertain.'' (Sec. 695.)

In the case of the *Estate of Washburn*, 11 Cal. App. 735, 741, [106 Pac. 415], this court, through Chipman, P. J., approves the definition of a vested remainder as it is given in the American and English Encyclopedia of Law, volume 24, second edition, page 389, as follows: ''The true criterion of a vested remainder is the existence in an ascertained person of a *present fixed right* of future enjoyment of the estate limited in remainder, which right will take effect in possession immediately on the determination of the precedent estate, irrespective of any collateral event, provided the estate in remainder does not determine before the precedent estate.''

In *Hayward et al.* v. *Peavey*, 128 Ill. 430, [15 Am. St. Rep. 120, 21 N. E. 503], the subject of remainders is thus spoken of: ''A remainder is said to be vested when a present interest passes to a party, to be enjoyed in the future, so that the estate is invariably fixed in a determinate person after the particular estate terminates, while a contingent remainder is one limited to take effect, either to a dubious and uncertain person, or upon a dubious and uncertain event. (2 Blackstone's Commentaries, 168.) . . . But it does not necessarily follow that every estate in remainder which is subject to a contingency or condition is a contingent remainder. The condition may be precedent or subsequent. If the former, the remainder cannot vest until that which is contingent has happened, and thereby become certain. If the latter, the estate vests immediately, subject to be defeated by the happening of the condition''—citing cases.

''It is,'' says Kent (4 Commentaries, 202–206), ''the uncertainty of the *right* of enjoyment, and not the uncertainty of its actual enjoyment, that renders the remainder contingent.''

The foregoing formulas, as before stated, are, of course, clear and easy of apprehension, but the important and often the difficult question then arises whether *a present fixed right* of future enjoyment of the estate limited in remainder exists in ''an ascertained person.''

While it will always seek to effectuate the wishes of the testator, ''the law prefers to consider future estates as vested.'' (*Estate of Washburn*, 11 Cal. App. 735, [106 Pac. 415].) As

is said in *Farnam* v. *Farnam,* 53 Conn. 278, [2 Atl. 327]:
"That the courts will incline in doubtful cases to construe a
devise or legacy as vested rather than contingent is a
familiar and well-settled rule. In some instances courts seem
to have gone so far as to say that they will, if possible, con-
strue it as vested. It is enough for our present purpose to
say that we ought to give this will that construction if its lan-
guage will fairly admit of it."

After reviewing the decisions of the courts of many juris-
dictions, the American and English Encyclopedia of Law,
second edition, volume 24, page 392, says: "The courts have
always regarded contingent estates with disfavor, and from
the earliest times have inclined toward that construction
which holds a remainder vested rather than that which con-
siders it contingent, when the question is doubtful. It has
even been said that if there is the least doubt, advantage is to
be taken of the circumstance occasioning that doubt to hold
that the remainder is vested and not contingent."

In *Williams* v. *Williams,* 73 Cal. 99, [14 Pac. 394], our su-
preme court says: "The law favors the vesting of interests,
and every interest will be presumed to vest, unless a contrary
intention *is clearly manifested.*"

And, lastly, upon this proposition, section 1341 of our Civil
Code provides that "testamentary dispositions, including de-
vises and bequests to a person on attaining majority, are pre-
sumed to vest at the testator's death."

We have discovered no language anywhere in the testament
before us that is inconsistent with the view that by the devise
to Marion De Vries the testator intended to create in the
former a vested future interest.

It will first be noted that the second clause of the testament
under present consideration reads: "I *give, devise and be-
queath* all the property of which I may die seized and pos-
sessed, both real and personal to my beloved wife, Mary Jane
De Vries, for her natural life, *the remainder thereof to my
sons hereinafter named,*" etc.

It is declared by the learned trial judges, in their written
opinion, that if the foregoing "were the only provision of the
will relating to the disposition of the testator's property the
question would be free from doubt." It is, of course, to be
conceded that if the devises subsequently made by the testator

are inconsistent with the language of the second clause of the testament just quoted, such devises must prevail. In other words, while the language of the second clause of the will clearly indicates an intention to create vested remainders over to the sons, yet if the specific devises in remainder to the sons subsequently created out of the property from which the life estate is carved, are made subject to such contingencies as to the right of enjoyment as to clearly disclose an intention to create contingent remainders, then the devises so made would, of course, control the general language of the second clause of the testament and would, therefore, prevail. On the other hand, if we find no inconsistency between the general language of the second clause and the language in which the specific devises are declared, or, if the language by which the specific devises are created is so ambiguous as to make it uncertain whether therein and thereby the testator intended to create vested or contingent future interests, and there are no other circumstances arising from the testament itself to compel a contrary view, then the general language of the second clause of the testament to which we have referred becomes of signal and, indeed, controlling importance as an aid in the ascertainment of the intention of the testator with regard to the time of the vesting of the *right* of enjoyment of such future interests.

But, apart from any consideration of the general language of the instrument, we think that, as before declared, from the language of the fourth clause itself, and through no strained or unnatural construction thereof, no serious difficulty need confront the court in reaching the conclusion that the intention of the testator as therein and thereby expressed was to create in his son, Marion, a vested remainder.

It will be observed that the fourth clause of the testament is divided into two paragraphs: The first involving the devise to Marion; the second, to the latter's wife. It will further be observed that the first paragraph uses words of present devise—that is, the language of the testator is: "I *give* and *bequeath*," etc. Thus far there could not arise any question but that the testator intended by the use of those words the *vesting* in Marion De Vries a *present fixed right*. But, as we have seen, the contention is that the language immediately preceding the quoted words, "Upon the termination of the

life estate hereby created in my wife, Mary Jane De Vries,'' refers the vesting of the right to the time of the death of the life tenant or the termination by her death of the life estate, and that, therefore, the effect of said language is not only the postponement of the time of the *actual* enjoyment but also of the time of the vesting of the *right* of enjoyment of the future interest thus created. But we think that where, as here, words of devise refer to the present or are in the present tense, the words, "upon the termination of the life estate" or "after" such termination, relate to the time of the possession or actual enjoyment of the interest so devised and not to the time at which such interest shall vest or become in the donee a fixed right. It will not for a moment be questioned that words of present devise, such as are used here, are inconsistent with language which may be construed to postpone the immediate *vesting* of such right, and, as suggested, if the language immediately preceding the words of present devise in the fourth clause of the testament here may be held to be inconsistent with the present vesting of the interest, then at least a serious doubt arises as to what the testator actually intended should be the effect in legal contemplation of the devise to Marion. Therefore, whether we may hold that the words of present devise as employed by the testator themselves irresistibly import an intention to create a vested remainder, or the language of the fourth clause, as a whole, is so uncertain and ambiguous as to leave in serious doubt what the testator's specific intention in that respect was, in either case, under the uniformly accepted rules of construction, the conclusion must be the same. But, manifestly, if the construction contended for by the respondent and sustained by the court below be sound, the language, "I devise and bequeath," or "give and devise," is controlled entirely by the words immediately preceding it. We can perceive no reason for such construction, and, indeed, we are of the opinion, as before declared, that, when we consider the language of the clause in question in connection with other parts of the testament or with what appears clearly enough to us to be the general scheme of the testator, such construction would fall far short of discovering the intention of the deceased with respect to the devise to Marion.

But we are not without eminently respectable authority for the foregoing views. The general rule as to the employment of words of present gift or devise, in immediate connection with the use of the prepositions "upon," "after" and "at," expressive of the time at which the intermediate estate must terminate, in instruments disposing of property, is laid down by the American and English Encyclopedia of Law, second edition, volume 30, page 768, as follows: "The use of words of present gift, or language which has the same import or effect, is expressly recognized as operating, in the absence of other controlling circumstances, to create a vested interest in the beneficiary."

Many cases may be found where that rule has been applied to a state of facts strikingly similar to the circumstances of the present case. We shall here notice a few of those cases.

In the *Matter of Elliott*, 27 Misc. Rep. 258, [58 N. Y. Supp. 603], the testator gave to his widow, during her life or until remarriage, his real and his residuary personal estate. Upon her death or remarriage the executors were directed by a codicil to sell and convey the realty, convert the personalty into money, and out of the proceeds pay a son $1,500, and to one Alphrona Town, $800, "which said amounts," so the testament read, "I do hereby give and bequeath unto them to be paid only as aforesaid." Alphrona Town died during the lifetime of the widow. The contention was that the bequest to Alphrona Town lapsed by reason of her death during the lifetime of the testator's widow. The referee sustained that contention, holding that said bequest was contingent, and that it could only become vested or effective by the legatee's surviving the happening of the death or remarriage of the widow. Reversing the findings of the referee, the surrogate court said: "His [the referee] decision is principally based upon the circumstance that the testator directed the conversion of the real estate at a future time and the payment of the legacy from the proceeds." The surrogate then refers to a number of cases by the light of which the referee construed the testament and proceeds: "The rule declaring that where the gift consists only in a direction to divide or pay at a future time, the vesting as well as the time of payment is postponed, which is referred to in the cases above cited, and

17 Cal. App.—13

which doubtless acquires greater pertinency and significance from the direction for conversion contained in the wills considered in some of them, has been repeatedly stated to be not an inflexible or arbitrary rule, but one readily yielding to the intention of the testator, and sometimes evidence of a very slight character has been resorted to by the courts, and taken as expressive or indicative of such intention. (Citing cases.) Almost invariably accompanying the declaration of the rule mentioned is found the statement of another rule or principle similarly formulated for the purpose of aiding in discovering the intention of the testator, and that is that where there is a direct or immediate gift, the subject of which cannot come into possession or enjoyment of the legatee until some future time, the gift is, nevertheless, to be regarded as indefeasibly vested. This latter rule seems to me to more fitly accord with the intention of the testator in the present case, and I think it should control its disposition. Words of present gift are here clearly used. The testator says: 'I do hereby give and bequeath.' The use of such language, or language of the same import, or effect, is expressly or impliedly recognized by the authorities as effective, in the absence of other controlling circumstances, to create a vested interest or estate in the beneficiary." (Citing *Matter of Young,* 145 N. Y. 535, [40 N. E. 226] ; *Delaney* v. *McCormack,* 88 N. Y. 174; *Smith* v. *Edwards,* 88 N. Y. 92; *Shipman* v. *Rollins,* 98 N. Y. 311; *Goebel* v. *Wolf,* 113 N. Y. 405, [10 Am. St. Rep. 464, 21 N. E. 388] ; *Matter of Baer,* 147 N. Y. 354, [41 N. E. 702] ; *Delafield* v. *Shipman,* 103 N. Y. 468, [9 N. E. 184] ; *Hiller* v. *Gilbert,* 144 N. Y. 68, [38 N. E. 979] ; *Ross* v. *Roberts,* 2 Hun, 90; affirmed, 63 N. Y. 652; *Matter of Mahan,* 98 N. Y. 372; *Geissee* v. *Bunce,* 23 App. Div. 292, [48 N. Y. Supp. 249] ; *Warner* v. *Durant,* 76 N. Y. 136; *Loder* v. *Hatfield,* 71 N. Y. 99; *Wells* v. *Seeley,* 47 Hun, 109; *Matter of Gardner,* 140 N. Y. 122, [35 N. E. 439].)

In the *Matter of Conger,* 81 App. Div. 493, [80 N. Y. Supp. 933], the will giving a life interest to the testator's wife and daughter provided that, "*after* the death of my said wife and daughter, I give, devise and bequeath unto," etc. Construing said will and interpreting the language quoted, for the purpose of discovering whether it was the

intention of the testator that the remainder so created should operate to vest the right or title to such future interest in the remainderman upon the former's death, the court says: "If the testator had said, 'I give, devise and bequeath unto the legatees named certain shares of stock, such bequests to take effect in enjoyment after the death of my life tenants,' there could be no question about the meaning or validity of the clause. We think it requires no particular straining to hold that when he said, 'after the death' of said life tenants, 'I give, devise and bequeath' unto the same persons, he meant the same thing, namely, a present, immediate bequest and gift of the property, subject only to delay in payment and enjoyment until after the death of those who had a prior right to the enjoyment as life tenants. The *vesting* of title was to *take effect immediately;* the actual division and delivery of the certificates of stock was to occur in the future."

In *Farnam* v. *Farnam,* 53 Conn. 261, [5 Atl. 682], a testamentary trust was created, by the terms of which certain sums were to be paid by the trustees annually to the widow of the testator and to his children, and "at the decease of the last survivor of my said children, if my said wife shall not then be living, but if living, then upon her death, this trust shall cease; and I give, devise and bequeath all the estate which shall then be held in trust under this will to my grandchildren who shall then be living, to be equally divided among them *per capita* and *per stirpes,* and to their heirs forever." It is then provided that if any grandchild of the testator shall have died, leaving a child or children surviving at the expiration of said trust, such child or children shall take the share that "his, her or their parent would have been entitled to if living," etc. The attack upon the testament was upon the ground that the fourth and fifth clauses (the latter the one just referred to) were inoperative, for the reason that they were in violation of the Connecticut statute against perpetuities. The main question thereupon arising was whether the estate in the grandchildren was a vested or contingent remainder. The court held that the interest so created was a vested remainder, saying: "The words, 'I give, devise and bequeath,' import a present interest unless other provisions in the will clearly manifest a different intention."

In the *Matter of Seaman*, 147 N. Y. 69, [41 N. E. 401], the sixth and seventh articles of the testament read as follows: "All the rest, residue and remainder of my estate, real and personal, I give, devise and bequeath to my executors, hereinafter named, in trust to apply and pay over the income of one equal undivided half part thereof to my said adopted daughter and niece, Elizabeth Seaman, during her natural life, and *upon her decease I give, devise and bequeath* said equal undivided one-half part of my estate so held in trust for my said adopted daughter and niece to the children of my nephew, George A. Seaman, living at the time of her death, share and share alike. Seventh. I direct and order my said executors hereinafter named to apply and pay over the income of the other equal undivided half part of my estate so held in trust by them to my said adopted son and nephew, George A. Seaman, during his natural life, and *upon his decease, I give, devise and bequeath* the said equal undivided half of my estate, so held in trust for my said adopted son and nephew, to the children of my said nephew, George A. Seaman, living at the time of his death, share and share alike." The New York court of appeals held that the words, "I give, devise and bequeath," as thus used, were words of present gift and denoted a vested interest at the death of the testator, and, differentiating the case before it from other cases cited, among other things said: "Here there are words of present gift, for the phrase 'upon her decease,' like the expression 'from and after,' does not prevent the legacy from vesting." (Citing *Nelson* v. *Russell*, 135 N. Y. 137, [31 N. E. 1008].)

"In applying the rule which favors the construction of remainders as vested," it is said, in the second edition of the American and English Encyclopedia of Law, volume 24, page 395, "a distinction has been made between certain words as importing time and contingency respectively. Accordingly, the adverbs 'when,' 'then,' 'after,' 'until,' 'from,' etc., in a devise of a remainder after a precedent estate determinable on an event which must necessarily happen, are construed to relate merely to the time of the enjoyment of the estate and not to the time of the vesting in interest. Words denoting contingency, on the other hand, are 'if,' 'in the event,' and

the like.'' (See *Matter of Watts,* 68 App. Div. 357, [74 N.
Y. Supp. 75] ; *Hersee* v. *Simpson,* 154 N. Y. 496, [48 N. E.
890] ; *McArthur* v. *Scott,* 113 U. S. 380, [5 Sup. Ct. 652,
28 L. Ed. 1015] ; *Cropley* v. *Cooper,* 19 Wall. 167, [22 L. Ed.
109], in each of which the rule of construction contended for
by appellant here is applied. See, also, *Estate of Cavarly,*
119 Cal. 406, [51 Pac. 629] ; *Dunn* v. *Schell,* 122 Cal. 627,
[55 Pac. 595] ; *Estate of Fair,* 132 Cal. 546, [84 Am. St. Rep.
70, 60 Pac. 442, 64 Pac. 1000] ; *Estate of Campbell,* 149 Cal.
717, [87 Pac. 573].)

But, as we have seen, the conclusion of the court below, it
is argued, is supported by the construction which respondent
places upon the language of the second paragraph of the
fourth clause, wherein and whereby the testator, for the ben-
efit of the wife of Marion, guards against a contingency that
might happen before the vesting in Marion of the interest
devised to him. We are unable to see wherein said second
paragraph or the contingent provision therein made for
Marion's wife exercises any influence upon or in any way
limits or qualifies the interest devised to Marion. Indeed, we
are of opinion that a careful examination of the language of
said paragraph will disclose to the mind considerations which
negative rather than sustain the conclusion to which the
learned trial judges were persuaded as to the intention of the
testator with respect to the devise to Marion.

Said second paragraph of the fourth clause of the testa-
ment, it will be remembered, reads, ''If my son, Marion De
Vries, should precede in death his wife, Minnie L. De Vries,
and leave him no lawful issue surviving, and should such
death of my son, Marion De Vries, occur before the property
herein *devised* and *bequeathed* to him vests in him, then all
the interest herein and hereby *devised* and *bequeathed* to said
Marion De Vries shall pass to and vest in and become the
property of said Minnie L. De Vries, my son, Marion's wife,
absolutely and forever.''

It seems clear to our minds that the fourth clause of the
testament, read together, means this: That the testator in-
tended to and did devise to Marion De Vries a present interest
in remainder in the property described in said clause; that,
counting upon the certainty of death but the uncertainty as

to the time thereof, and, therefore, the possible contingency of Marion preceding his wife in death, he desired and intended that in the event that that contingency happened before the remainder to Marion vested in him—that is, before the death of the testator—then the estate so limited to Marion should go to the latter's wife. In other words, the testator devised to Marion a vested future interest, and to his wife a contingent future interest in the same property. We think, as previously suggested, that this construction is fully sustained by these considerations deducible from the second paragraph itself: 1. Assuming, as is the contention, that the interest to Marion was not intended to vest until the determination of the life estate, if Marion should precede in death his wife, leaving lawful issue, before the termination of the life estate, the result in that case would not only be that Minnie L. De Vries would and could take nothing under the contingent devise to her upon the death of the life tenant, but that devise of the testament would absolutely fail and the interest devised necessarily be remitted to administration, for it will be noted that there is no provision as to whom the property devised to Marion should go in the event Marion died, leaving issue, prior to the death of his wife and before the remainder to him became a vested interest. We cannot persuade ourselves, in view of the evident care with which the whole testament was prepared and executed, disclosing a clear design to thus specifically dispose of all interests in his property, that the testator would have so arranged his disposal of one part of his estate, of which undoubtedly he sought to make specific disposal, as to admit of a possible lapse thereof. We are of the opinion, rather, that the testator, having intended Marion's remainder should vest upon his (testator's) death, must have further had in mind that, in case Marion, leaving lawful issue, should precede both his wife and the testator in death, the latter would still have the opportunity and ability to make such disposition of the interest he intended for Marion as would accord with his (testator's) wishes with respect to Minnie L. De Vries and such issue. In any event, considering the fact that the testator displayed an unquestioned and unquestionable wish to provide for Minnie L. De Vries, in the event of the happening of the contingency upon

which she was to take, we think it would be the more reasonable view to hold that he did not intend that any circumstances should arise, in the testamentary disposition of his estate, whereby it could happen that the interest which is the subject of the devise to Marion De Vries should go undisposed of by his last will.

The second proposition plainly deducible from the second paragraph of the fourth clause, and which, we think, clearly confirms the position that the devise to Marion should operate as a vested remainder, arises from the language itself of said second paragraph. Therein, as we have seen, the testator provides that, upon the happening of the condition upon which Minnie L. De Vries shall take, "then all the interest herein and hereby *devised* and *bequeathed* to said Marion De Vries shall pass to and vest in and become the property of said Minnie L. De Vries," etc. Thus it will be noted that the words of action—*devise* and *bequeath,* as used in the preceding paragraph of said clause—are used in the second paragraph in the past tense—that is, as denoting action already taken. In other words, to paraphrase the fourth clause in its entirety, the testator has therein declared: "I devise and bequeath to Marion De Vries the property herein described, the possession, however, to take effect on the determination of the estate for life in said property to my wife, Mary J. De Vries. But should my son, Marion, die, leaving no lawful issue, before the death of his wife, Minnie L. De Vries, and prior to the vesting in him of the estate or interest so devised to him, then the property which I have *already* devised and bequeathed to said Marion shall pass to and vest in and become the property of said Minnie L. De Vries," etc. In short, it appears reasonably clear to our minds that, by the use of the language in the second paragraph, "then all the interest herein and hereby *devised* and *bequeathed* to said Marion De Vries," etc., the testator intended to emphasize his intention as clearly implied from the employment of words of present devise in the first paragraph that the *right* of enjoyment of the interest devised to Marion should take effect or vest upon and coincidently with the beginning of the life estate, or, in other words, at the death of the testator.

That the testator had a clear conception of the legal signifi-
cance of words of present devise, unqualified by other lan-
guage or expressions, is indubitably shown, it appears to us,
by the language of the devise to his son, Lee De Vries.
Therein he likewise uses words of present devise, but qualifies
the same with, ''To have and to hold the same [the property]
for and during all his natural life only, and thereafter to
*vest* as hereinafter stated, or to be taken by him absolutely,
dependent upon the following *events* and *conditions.*'' Then
follows a provision that should Lee De Vries ''die before I
die, and leave him lawful issue surviving, then and upon the
termination of the life estate herein created in my wife, if
such lawful issue shall *survive my said wife,* then the said
described real property hereby devised to my said son, Lee
De Vries, shall *vest absolutely* in fee simple in such lawful
issue of my said son, Lee De Vries.'' It is then provided
that if the wife of Lee De Vries die before him, and Lee
De Vries should *''survive me and my wife, then and in that
event, and upon the termination of the life estate hereby
created in my wife,* all of the said real property hereby de-
vised to my son, said Lee De Vries, shall *absolutely vest*
in my son, said Lee De Vries, unaffected by any life estate
therein.''

It will be noticed that the initial language of the devise
to Lee De Vries, like the devise to Marion, contains words
of present devise; but the testator later qualifies or limits the
effect of those words by annexing to said devise certain condi-
tions upon which the interest therein created is to *vest.*
Indeed, by express language the testator suspends the *vesting*
of the fee in the interest devised to Lee De Vries, for he
specifically provides as a condition upon which such interest
to Lee shall vest that the latter must survive not only the
testator but the life tenant. It will likewise be noticed that
in providing for an interest in the issue of Lee De Vries, the
testator postpones, by express words, the *vesting* of said in-
terest in such issue until the termination of the life estate—
that is, the provision is that the issue of Lee must survive
the life tenant before the interest so devised shall vest in
them. It will further be observed that in all the instances
of the postponement of the vesting of the interest devised to

Lee De Vries, apt words of suspension, such as "then," "then and thereupon," "then and in that event," "immediately vest" and "absolutely vest," are used as indicative of an intention to suspend the vesting.

From the foregoing considerations it is very manifest, we think, that the testator, in preparing and executing the testament before us, fully appreciated the necessity for the use of express language by which to make clear and unquestionable his intention to postpone or suspend the *vesting* until the determination of the life estate in those instances where words of present devise are used, but where he did not. intend the creation of vested interests. It is, therefore, very plain to our minds that the testator employed words of present gift in the devise to Marion advisedly and with the express purpose of creating the nature of the interest, as to the time of the vesting of the *right* thereto, which those words naturally import; that, had he intended that the interest so devised should constitute a contingent remainder or vest only at the conclusion of the life estate by the death of the life tenant, he would then, as in the case of the devise to Lee, have so declared in express language or by words so clear and apposite as to have left no room for doubt upon that proposition.

It may be remarked that it is extrajudicially declared in the brief of appellant that it was held by the court below that the provision of the testator's will for his son, William G. De Vries, vests his remainder in him on the death of the testator. In other words, the court below, as we understand counsel for appellant, has construed the devise to William G. to create a vested future interest. The devise to said son reads: "Unto my son, William Garland De Vries, upon the termination of said life estate, I give, devise and bequeath all those certain lots," etc. There is no other provision, conditional or otherwise, contained in the testament with respect to the interest thus devised to William G. De Vries, and clearly the court was right in holding that the interest so devised was a vested remainder. And, with the exception of the contingent provision for Marion's wife, there is, in practical effect, no ground of distinction between the devise to Marion and the devise to William G. The only

difference, as will readily be observed, consists in the transposition of the words with which the two interests are devised. Manifestly, therefore, if the devise to William G. creates a vested interest, it must be true that the devise to Marion creates a like interest, unless it may be held that the contingent provision for Marion's wife exercises some such influence on or control of the language in which the devise to Marion is expressed as to make the interest so devised a contingent remainder, and this we have shown cannot reasonably be held to be the effect of that provision. While this part of the discussion is merely *argumentum ad hominem,* we notice the proposition that calls it forth because we have, after a careful examination of the principal question presented here, been curious, yet unable, to perceive the method of reasoning by which the learned court below has discerned the slightest distinction between the devise to Marion and that to William G. De Vries.

But we have pursued the discussion sufficiently. As stated, the only contingency whatever that we have been able to find in the fourth clause of the testament relates solely to the provision for Minnie L. De Vries. As to the devise to Marion, we find here "the existence in an *ascertained person* of a *present fixed right*" of future enjoyment. In other words, we can here "point to a person who, if the life estate should cease, would *eo instanti et ipso facto* have an immediate right of possession," and this, as the court of appeals of New York says, in *Moore* v. *Littel,* 41 N. Y. 80, "is a vested remainder, and, by necessary consequence, all the contingencies which may operate to defeat the right of possession are to operate, and only to operate, as conditions subsequent."

We are satisfied, for the reasons herein given, that the testator intended a vested interest in his son, Marion De Vries, and the order or decree appealed from is, therefore, reversed.

Chipman, P. J., and Burnett, J., concurred.