[L. A. No. 18527. In Bank. May 1, 1944.]

Estate of ALFRED EASTER, Deceased. CALIFORNIA TRUST COMPANY, as Administrator, etc., Appellant, v. PAUL W. JONES, as Administrator, etc., et al., Respondents.

PAUL W. JONES, as Administrator, etc., Appellant, v. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES, as Trustee, et al., Respondents.

B. R. Ware, Raymond W. Stephens and Stephens, Jones, Inch & La Fever for Appellants.

Craig & Weller, Frank C. Weller and Thomas S. Tobin for Respondents.

GIBSON, C. J.—Pursuant to the will of Alfred Easter, certain property was distributed by the probate court in trust during the life of his wife. On the wife's death the trustee filed a final account and petitioned for instructions and for distribution. From portions of the resulting decree these appeals were taken, which are presented on a joint bill of exceptions.

The will, executed March 30, 1920, provided that the trustee should pay to the testator's wife, Catherine, $300 a month during the term of her natural life, and the balance of the net income was to be divided among his children by a former marriage as follows: one-third to his son, Ephraim, and two-thirds in equal shares to his three daughters, Kate B. Gherky, Elizabeth R. Marriott, and Martha B. Todd. The share of any child who might die was to be paid to his or her issue per stirpes, and if the son left a wife, but no issue, she was to be paid one-half of his share and the remainder was to be divided among the daughters. There was a spendthrift provision as to such income, and a provision that the trustee should allow the wife Catherine to live on certain property, or should provide another home for her rent-free. The trust was originally to terminate upon the death of the survivor of his wife and four children, and it was provided that "Upon the termination of this trust my said Trustee shall convey, deliver and pay over all the corpus of said trust fund then in its possession or under its control unto my heirs at law in accordance with the present statute of succession of the State of California." The will recited that the estate consisted largely of community property, but that the wife had agreed that the provisions of the will were for her best interests. The will provided that if she should elect to take a share of the community property all provisions for her benefit should lapse and the net income from the trust should go to the children. Endorsed on the will was an agreement by the wife to take under its terms and not to claim any part of the estate as her share of the community property.

By a codicil dated May 2, 1921, the testator provided that the trust should terminate upon the death of his wife Catherine and that on the death of his son Ephraim, leaving a widow but no issue, the whole of the net income from the trust, after payment of the $300 to the testator's wife, should be paid in equal shares to his three daughters and the son's widow. In a second codicil dated January 13, 1922, the testa-

tor devised, certain real property to his wife and son, and directed that certain other real property should not be sold by the trustee during the lifetime of his wife.

When the testator died on February 2, 1923, his only heirs were his wife, Catherine, and his four children. The wife filed in the probate proceeding an election to take under the will and to waive ''any claim which she might make or assert in or to any of the property of said estate by reason of any community interest or share that she may have or be entitled to therein.'' The decree of distribution, dated October 3, 1923, set forth directions for administering the trust and provided that ''*Upon the death of the said Catherine Easter,* the trust hereinbefore referred to shall terminate and *all of the property* then in the hands of the trustee or in its possession or control, *shall go to and vest in* the heirs at law of the said Alfred Easter, deceased, in accordance with the statute of succession of the State of California in force in the month of March, 1920, and the trustee is directed to convey, deliver and pay over all the corpus of said trust funds then in its possession or under its control unto such heirs in accordance with the statute of succession of the State of California in force in the month of March, 1920.'' (Italics added.)

Prior to the death of the wife Catherine, on January 8, 1942, but after the testator's death, the daughter Kate B. Gherky died, leaving two daughters, Grace Winkler and Kathleen Broadridge. During the same period the son Ephraim died without issue, but left a widow who also died before the death of Catherine. When the trust terminated upon Catherine's death, the trustee instituted the present proceeding and the lower court ordered the corpus to be distributed one-third to each of the surviving daughters of the testator, Martha B. Todd and Elizabeth R. Marriott, and the one-third share of the deceased daughter to the two granddaughters, Grace Winkler and Kathleen Broadridge. Appeals from this portion of the decree were taken by the administrator with the will annexed of the estate of the son Ephraim, and by the administrator with the will annexed of the estate of the testator's wife Catherine.

The question for decision is whether the identity of the ''heirs at law'' (who were to take on termination of the trust) is to be determined as of the time of death of the testator or the time of termination of the trust. If the interests of the

heirs vested at the time of termination of the trust rather than at the time of the testator's death, then the estates of the testator's wife and son would take nothing because of their prior deaths, and the decree must be affirmed.

The appellants contend that the devise of a remainder to "heirs" or to others determinable at the time of the testator's death passes a vested remainder as of that time in the absence of a contrary intention clearly expressed, and that there is no evidence in the record, either in the stipulated facts, the testamentary documents or the 1923 decree of distribution to sustain a finding that the testator intended to postpone the vesting and thus limit participation in the remainder interest to his blood relatives living at the termination of the trust. On the other hand, the respondents point to a number of provisions in the will and the 1923 decree as indicating an intention that the corpus of the trust should vest in the testator's children, or the lawful issue of any deceased child per stirpes, upon the termination of the trust.

It is settled, however, as conceded by the appellants, that the effect of a will is controlled by the decree of distribution when final. The decree is said to be "conclusive as an ascertainment and adjudication of the terms of the trust, and of the rights of all parties claiming any legal or equitable interest under the will. (*Goad* v. *Montgomery*, 119 Cal. 552 [51 P. 681, 63 Am.St.Rep. 145]; *Williams* v. *Marx*, 124 Cal. 22 [56 P. 603]; *More* v. *More*, 133 Cal. 489 [65 P. 1044].) The decree supersedes the will and prevails 'over any provision therein which may be thought inconsistent with the decree.' (*Goad* v. *Montgomery*, 119 Cal. 552 [51 P. 681, 63 Am.St.Rep. 145].)'' (*Keating* v. *Smith*, 154 Cal. 186, 191 [97 P. 300].) In *Luscomb* v. *Fintzelberg*, 162 Cal. 433, 438 [123 P. 247], the court stated, "It was equally within the jurisdiction of the court, and its duty, to determine . . . what other persons had legal or equitable rights to the distributable property of the estate, and the extent and nature of their interests. Having jurisdiction to determine these matters on distribution, when the decree does so determine them, although the determination may be incorrect, it is conclusive as to the rights of heirs, legatees, and devisees unless corrected on appeal. It is not subject to collateral attack or to be impeached by resort to the terms of the will. The rights of the parties must thereafter be determined by resort to the decree of distribution alone as a final and conclusive adjudi-

cation of the testamentary disposition which the deceased made of his property.'' (See, also, *Estate of Wallace,* 11 Cal.2d 338 [79 P.2d 1094] ; *Estate of Goldberg,* 10 Cal.2d 709 [76 P.2d 508].) This being so, the determination of this cause turns upon the proper construction of the decree of distribution.

We find no uncertainty or ambiguity in the decree of distribution., It expressly provides that ''Upon the death of the said Catherine Easter the trust . . . shall terminate and all of the property then in the hands of the trustee or in its possession or control, *shall go to and vest in* the heirs at law of the said Alfred Easter, deceased,'' in accordance with the 1920 statute of succession. (Italics added.) This portion of the decree was properly construed by the trial court herein to distribute a contingent interest only to the heirs, the contingency being their survivorship of the testator's wife upon whose death the trust terminated. In other words, the interest of the heirs was to vest only upon their surviving such termination of the trust. The decree of distribution, by providing that two things should occur ''Upon the death of the said Catherine Easter,'' namely, 1. ''the trust . . . shall terminate,'' and 2. ''all the property then in the hands of the trustee . . . shall go to and vest in the heirs at law of said Alfred Easter, deceased,'' clearly indicates an intention that the interests of the heirs should vest at the time of the termination of the trust. Any other construction would ignore the normal and usual meaning of the words ''shall go to and vest in the heirs at law.''

Appellants urge, however, that use of the future tense of verbs in devising or distributing a remainder interest does not militate against it vesting on the death of the testator, citing *Estate of Wallace,* 11 Cal.2d 338 [79 P.2d 1094] ; *Estate of Dunphy,* 147 Cal. 95 [81 P. 315] ; and *Estate of Newman,* 68 Cal.App. 420 [229 P. 898]. These decisions are not controlling here. The Wallace case involved the meaning of ''shall distribute'' and the other cases dealt with the construction of wills. From their nature, wills are made to take effect at a future time, i.e., at the death of the testator, and hence it may be proper to construe the future tense when used in a will as applying to the time of the testator's death, and not to a still later time. A decree of distribution, on the other hand, normally speaks as of its own date, for it is

usually an order for the present delivery of property; and the use of the future tense must ordinarily connote future action. In our opinion, such was the intention here.

The testator's widow claimed no rights in hostility to the will, but the administrator of her estate claimed that the remainder estate should be distributed as community and not as separate property. However, he concedes that the community question "may be ignored if this Court should sustain that part of the decree below holding that the widow and son took no part of the remainder interest as devisees under Mr. Easter's will or as distributees under the 1923 decree" of distribution. We therefore find it unnecessary to discuss the problems and contentions relating to the character of the property and the effect of the widow's election or waiver, if any, of her claims to such remainder interest.

Those portions of the decree appealed from directing distribution of the corpus of the trust property are affirmed.

Shenk, J., Curtis, J., Edmonds, J., Carter, J., and Schauer, J., concurred.

TRAYNOR, J., Dissenting.—The majority opinion rests entirely on the decree of distribution. It holds that the decree is neither uncertain nor ambiguous and that its provision that the property, upon the termination of the trust, "shall go to and vest in the heirs at law" clearly indicates that the interests of the heirs were to vest at the time of the termination of the trust. The word "vest," however, has more than one meaning (see 44 Words & Phrases (perm. ed. 1940) 191-194; 2 Simes, Law of Future Interests, § 347, p. 82; Leach, Cases on Future Interests, (2d ed.) 255), and it is not clear that the probate court used the word to mean vest in right rather than vest in possession. It is hardly conceivable that the court would have used such general language had it intended to pass on the question whether the gifts to the heirs vested in right upon the death of the testator or upon the termination of the trust.

There is a presumption in favor of the vesting of testamentary dispositions at death. (Prob. Code, § 28, formerly Civ. Code, § 1341; *Estate of Newman,* 68 Cal.App. 420, 424 [229 P. 898]; *In re De Vries,* 17 Cal.App. 184, 190 [119 P. 109]), and "words expressive of future time are to be referred to the vesting in possession if they reasonably can be,

rather than to the vesting in right.'' (*Estate of Newman, supra,* at p. 429; see 49 A.L.R. 186, 187; 127 A.L.R. 609, 610.) The decree provides that the property ''shall go to'' the heirs. These are ''clear words of direct devise'' at the time of death (*Estate of Wallace,* 11 Cal.2d 338, 341 [79 P.2d 1094]; *Keating* v. *Smith,* 154 Cal. 186 [97 P. 300]) and their import is not altered by the accompanying word ''vest'' (*In re De Vries, supra,* at 191-192; *Randall* v. *Bank of America,* 48 Cal.App.2d 249 [119 P.2d 754]) or by the provision that the trustees shall ''convey, deliver and pay over'' the trust fund. (*Estate of Wallace, supra; Estate of Newman, supra;* see Restatement, Property, Future Interests, Parts 3 and 4, § 260.)

In the light of the foregoing authorities it is clear that the decree is open to the construction that the court was referring to the vesting in possession of the interests of the heirs. Since it cannot be determined from the decree whether the interests of the heirs vested in right at the death of the testator or upon the termination of the trust, reference must be made to the will to ascertain the meaning of the decree. (*Estate of Goldberg,* 10 Cal.2d 709 [76 P.2d 508].)

The will provides: ''This trust shall terminate upon the death of my said Wife Catherine,'' and ''Upon the termination of this trust my said Trustee shall convey, deliver and pay over all the corpus of said trust fund then in its possession or under its control unto my heirs at law in accordance with the present statute of succession of the State of California.'' Under these provisions the heirs must be determined as of the death of the testator. ''It is a general rule of testamentary construction, so universally recognized as to render unnecessary a full citation of the cases which support it, that in the absence of clear and unambiguous indications of a different intention to be derived from the context of the will, read in the light of the surrounding circumstances, the class described as testator's heirs, or such persons as would take his estate by the rules of law if he had died intestate, to whom a remainder is given by will, is to be ascertained at the death of the testator.'' (*Estate of Newman,* 68 Cal.App. 420, 424 [229 P. 898]; *Estate of Wallace,* 11 Cal.2d 338 [79 P.2d 1094]; *Keating* v. *Smith,* 154 Cal. 186 [97 P. 300]; *Estate of Ritzman,* 186 Cal. 567 [199 P. 783]; *Estate of De Vries,* 17 Cal.App. 184 [119 P. 109]; *Randall* v. *Bank of America,* 48 Cal.App.2d 249 [119 P.2d 754]; *Estate of Glann,*

177 Cal. 347 [170 P. 833]; *In re Rider's Estate,* 199 Cal. 724 [251 P. 799]; Rest., Property, Future Interests, Parts 3 and 4; §§ 260, 308; 33 L.R.A.N.S. 2; 13 A.L.R. 615; 49 A.L.R. 178; 127 A.L.R. 604.) Such rules of construction are as essential as rules of construction for deeds or negotiable instruments. Without them counsel could not advise their clients with any reasonable certainty, for the meaning of a will could not be ascertained until it had been passed upon by a court of last resort. (See Brown, *Problems of Construction Arising In The Law of Property—Particularly In The Law of Future Interests,* 79 Pa.L.Rev. 385, 389.) When a testator resorts to the word "heirs" after having exhausted his specific wishes by the previous limitations, he states in effect that he is content thereafter to let the law take its course. (*Whall* v. *Converse,* 146 Mass. 345, 348 [15 N.E. 660]; *Gilman* v. *Congregational Home Missionary Society,* 276 Mass. 580 [177 N.E. 621]; *Matter of Bump,* 234 N.Y. 60 [136 N.E. 295].) Under the law, which favors the creation of vested rather than contingent remainders, the testator's "heirs at law" are the persons who answer that description at the time of the testator's death. (*Ibid.*)

Respondents contend that a different intention can be derived from the context of the will, read in the light of the surrounding circumstances. Particular reliance is placed on the fact that one of the testator's heirs was his wife, who was given a life interest in the same property. If the person to whom a life interest in the property has been given is the sole heir of the testator, there is some incongruity in also giving such a person all the interest under the limitation to "heirs." The circumstance of his being the sole heir tends to establish that the testator intended the heirs to be ascertained as of the death of the sole heir. (Rest., Property, Future Interests, Parts 3 and 4, § 308, Comment k, p. 1715; *Estate of Wilson,* 184 Cal. 63, 64 [193 P. 581].) When, however, the taker of a prior interest is one of several heirs at the testator's death "no constructional tendency is sufficiently definite to be capable of statement" (Rest., Property, Future Interests, Parts 3 and 4, Comment k, p. 1717), and there is nothing to warrant the court's departing from the usual meaning of the word "heirs." (*Estate of Newman,* 68 Cal.App. 420 [229 P. 898].) Such a departure would exclude, not simply a particular heir, but all the heirs of a testator who die before

the particular heir, and would substitute others in their place. (See Ferrier, *Gifts to Heirs in California*, 26 Cal.L. Rev. 413, 423.)

Respondents invoke the rule set forth in *Estate of Hartson*, 218 Cal. 536, 540 [24 P.2d 171], that "where the provisions of a will are capable of two interpretations, under one of which those of the blood of the testator will take, while under the other the property will go to strangers, the interpretation by which the property goes to those of the blood of the testator is preferred." A gift to heirs, however, vests the property in those entitled to take under the statute of succession (Prob. Code, § 108, formerly Civ. Code, § 1334), and the provision in the will for the gift of the corpus to the testator's heirs "in accordance with the present statute of succession" contains no suggestion that the disposition of that corpus is limited to heirs who are "of the blood" of the testator. (See *Estate of Watts*, 179 Cal. 20, 23 [175 P. 415].) Other provisions of the will invoked by respondents are insufficient in my opinion to warrant a construction different from the usual meaning of the word "heirs." The provisions that the title to the home for Mrs. Easter should be vested in the trustee, and that the Catalina Court and Sixth Grammercy properties should not be sold during the life of Mrs. Easter, do not purport to qualify the gift over of the remainder interest. Neither do the provisions for the payment of income to Ephraim's widow during Mrs. Easter's lifetime, nor the references to the issue of deceased children, nor the references in the spendthrift provisions to income only.

Appellants' petition for a rehearing was denied May 29, 1944. Traynor, J., voted for a rehearing.